STATE ex rel. CITY OF ST. PAUL v. ST. PAUL CITY RAIL-
WAY COMPANY.[1]

April 26, 1912.

Nos. 17,529—(16).

**Street railway — authority of city council — ordinance valid.**

> Appeal from a judgment awarding a peremptory writ of mandamus to
> compel the St. Paul City Railway Company to construct and operate a street
> railway upon Maryland street, from Rice street to Como boulevard, pur-
> suant to an ordinance of the city. *Held*, construing section 18 of Ordinance
> No. 1227, that the city has, by its common council, the vested right to re-
> quire the railway company to construct new lines of street railway; that
> such right was not suspended or modified by sections 32 and 33 of chapter
> 4 of the home rule charter; that the ordinance requiring the construction
> of the new line is valid; that compliance therewith may be enforced by
> mandamus; that the question whether public interest or necessity requires
> the construction of any particular new line is one resting in the discretion
> of the common council, and its action cannot be interfered with by the
> courts, unless it is clearly an arbitrary one; and, further, that the finding
> of the trial court that a public necessity exists for the new line, and that
> it is not a cross-town line, is sustained by the evidence.

Upon relation of the city of St. Paul for a writ of mandamus
to compel defendant to construct and maintain a certain street
railway line, pursuant to a certain city ordinance requiring its
construction, the district court for Ramsey county granted its
alternative writ. In its answer the respondent set up that the line
ordered was a cross-town line; that there was no cross-town travel
in that part of the city; and that such proposed line was in viola-
tion of the provisions of section 3 of Ordinance No. 2,786. The
matter was tried before Olin B. Lewis, J., who made findings, and
as conclusion of law ordered that respondent railway company forth-
with construct, and maintain, and operate a line of street railway
upon Maryland street from Rice street to Como boulevard in St.

[1] Reported in 135 N. W. 976.

Paul, and properly connect the tracks thereof with its tracks upon Rice street, and to that end that a permanent writ of mandamus issue. From the judgment entered pursuant to the findings, the railway company appealed. Affirmed.

*J. C. Michael* and *N. M. Thygeson*, for appellant.

*O. H. O'Neill*, for respondent.

START, C. J.

On February 21, 1910, the common council of the city of St. Paul duly passed an ordinance requiring the St. Paul City Railway Company, hereinafter referred to as the Railway Company, to lay, construct, and operate a double line of street railway upon Maryland street, from Rice street to Como boulevard, and connect the tracks thereof with its railway tracks on Rice street. The railway company refused to comply with the ordinance. Thereupon this action was commenced in the district court of the county of Ramsey to compel the construction and operation of such street railway as required by the ordinance. The cause was tried by the court without a jury, and findings of fact made to the effect that the allegations of the petition are true, and, further, that a public necessity exists for the construction and operation of the line of street railway upon Maryland street, and that the same is not a cross-town line. As a conclusion of law, judgment was ordered, awarding a peremptory writ of mandamus, requiring the railway company to construct and operate the line as directed by the ordinance. Judgment was so entered, from which the railway company appealed.

The appellant's assignments of error raise the general questions whether the findings of fact are sustained by the evidence, and whether the ordinance is valid, and, if so, whether a compliance therewith may be enforced by mandamus. The questions as to the validity of the ordinance and its enforcement are the important ones presented by the record. Their solution involves a consideration of the provisions of several city ordinances relating to the appellant.

The railway company as originally organized acquired its rights in the streets of St. Paul by an ordinance of the common council,

No. 57, approved in January, 1872, which gave the railway company the right to construct and operate its street car lines upon any or all of the streets and avenues of St. Paul, except on a designated portion of Third street. This ordinance provided that only animal power should be used in the operation of the lines. Section 7 of this ordinance contained this proviso: "Provided, that if required by a resolution of the common council adopted by a vote of two-thirds of its members, to build, equip and operate an additional mile of said railway on any street or streets designated by the city council, every six months thereafter, the company accepting this franchise shall so build, equip and operate said mile or miles of railway, or forfeit to said city all rights or privileges to construct and operate any line of railway or track in any street or streets, or part of street or streets upon which said company has not constructed any railway tracks." This was the only provision relating to any right reserved to the council to order new lines to be constructed.

Additional and valuable rights were granted to the railway company by an ordinance, No. 1227, approved September 20, 1889, in consideration of which, and by the same ordinance, material rights and powers with reference to the control of the railway company by the common council were acquired by reservations and stipulations therein and the acceptance of the ordinance by the railway company. In and by this ordinance the railway company was granted the right to construct its lines and to operate them by electricity on designated streets of the city, which right, by a subsequent ordinance, No. 1502, was extended to all other streets upon which the railway company had the right to operate its lines. In consideration of the grant to it by ordinance No. 1227, the railway company surrendered its rights as to certain other streets, but Maryland street was not one of them. The following provisions of the ordinance are here material:

"Sec. 18. The common council reserves and shall possess the right at any time, and from time to time, after January 1, 1892, to order the construction and completion by said Saint Paul City Railway Company of any new lines of railway, or the extension

of any present or future lines of railway upon any and all streets in the city of Saint Paul upon which sewers shall have been constructed, and all lines or extensions so ordered shall be constructed and in operation within one year after such orders are made: Provided, that when such new lines or extensions are constructed all the provisions of this ordinance shall apply thereto.

"Sec. 19.  If said Saint Paul City Railway Company shall fail or neglect to complete, equip and operate all of said lines of railway designated in section one (1) of this ordinance within the time and in the manner herein specified, or shall fail to comply with the provisions of this ordinance, then all rights and privileges hereby granted shall be forfeited to the said city of Saint Paul."

"Sec. 23.  The said Saint Paul City Railway Company, its successors and assigns, shall be entitled to enjoy the rights and privileges hereby granted for the term of fifty (50) years after the passage and publication of this ordinance.

"Sec. 24.  Nothing in this ordinance contained shall have the effect of taking away or abridging any franchises, rights, powers and privileges granted to said company by any other ordinance or other authority, whether as respects the right to construct or maintain any railway or operate the same, or the power to be used in operating the same, or otherwise as may be prescribed by such other ordinance or authority, except as to the streets hereinbefore mentioned in section 16 of this ordinance.".

The ordinance requiring the construction of the new line is based upon section 18 of Ordinance No. 1227.   It is the contention of the railway company that the ordinance is invalid, and, further, that, if it is held to be valid, compliance therewith by the railway company cannot be enforced by mandamus; the sole effect of a failure to comply with the ordinance being a forfeiture of its rights in the street.   It is urged in this connection that the ordinance was not authorized by section 18 of Ordinance No. 1227, because the right of street railways in the streets of a municipality is a franchise, that the reservation and stipulation, in section 18, that the common coun-

cil shall possess the right at any time after January 1, 1892, to order the construction of new lines, constitute in no sense a grant of franchise to build and operate such new lines, and, further, that the section "is only a reservation of the right to enact further legislation at some future time, in the nature of an additional grant, but at the time of the enactment of Ordinance 1227, indefinite and uncertain, both as to the exercise of the reserved power and the streets to which it might apply."

It may be conceded that a right given to construct and operate street railways in the public streets is a franchise, and that section 18 is not in and of itself a grant of a franchise; but the conclusion claimed does not follow the concession, for the railway company had the right, by virtue of Ordinance No. 57 and the provisions of Ordinance No. 1227, to construct and operate its railway lines in all of the streets of the city, except as stated in Ordinance No. 1227. The street here in question is not within the exception. There was then no occasion for granting a franchise for any proposed new lines not within the exception. What, then, was the purpose of section 18?

It is obvious on the face of this section that its purpose was to secure to the municipality rights which it did not possess under the original ordinance, by virtue of which no absolute obligation rested upon the Railway Company to construct any new lines, on streets which it had the right so to do, on the demand of the common council. It is to be noted that section 7 of Ordinance No. 57 was limited to the building of an additional mile every six months, and, further, that the obligation imposed on the railway company was not absolute in its terms, but in the alternative. It was only required to comply with the requirement of the council to build the new line "or forfeit to said city all rights or privileges to construct and operate any line of railway or track in any street * * * upon which" the company had not built any railway track. While such an alternative obligation may have been sufficient for the protection of the interests of the city under the conditions existing at the time the original ordinance was enacted, and in view of the fact that only animal power

could be used, yet it is quite apparent that is was not so under the conditions existing in 1889, when electricity was to be substituted for animal power. The railway company at this time was asking for additional and valuable rights, which the city by its common council could deny or grant absolutely or on condition that the railway company surrendered rights on its part which were then deemed to be disadvantageous to the city. Thereupon the parties by section 18 made a new compact as to the building of new lines, whereby the railway company absolutely obligated itself to build new lines as therein required. The railway company had, after accepting the ordinance, no longer the option to build the required lines or forfeit its franchise.

It is, however, contended that section 24 of the new ordinance, which we have quoted, preserves to the railway company this option to build or forfeit. This section cannot be construed as applying to any subject which was specifically dealt with and fully covered by the parties by their express stipulation in the ordinance. Clearly section 24 refers to the rights and privileges theretofore granted which were not dealt with in the new ordinance. For example, the right to construct and operate street railways with animal power on any streets it might select other than the streets excepted in Ordinance No. 1227. Any other construction would emasculate the express concessions and stipulations on the part of the railway company contained in the new ordinance. We accordingly hold that section 18 of Ordinance No. 1227, upon its acceptance by the railway company, became a valid contract between it and the city of St. Paul, whereby the city acquired the vested right to require the construction and operation of new lines as therein provided, and that the legal obligation to comply with the requirement was assumed by the railway company.

The next contention of the railway company is that, if the right of the city by its common council to require the building of new lines under section 18 ever existed, it has been suspended or repealed by the Home Rule Charter of the city of St. Paul (sections 32 and 33, chapter 4). These sections provide, in effect, that no

117 M.—21.

extension or modification of any franchise or privilege heretofore granted, or any franchise hereafter granted, shall be valid, unless the grantee thereof shall agree in writing that the same shall be held subject to the conditions and limitations of the city charter, including the payment of a license fee of five per cent of the gross earnings. The object of these provisions is obvious. They were intended to prevent in the future the enlarging of existing franchises and privileges and the granting of new ones, except upon conditions which will secure the city some just compensation for the franchises and privileges granted. These sections of the charter have, however, no application to the ordinance directing the construction of the new line, for clearly it is not an extension of any existing franchise or privilege, or the grant of a new one; for, as we have stated, the railway company had the right to construct the new line, if it so elected, without first securing from the common council the right to so do. The ordinance was only the exercise of a right secured to the city by section 18 of Ordinance No. 1227. It follows that the ordinance requiring the new line to be built is valid.

The next contention to be considered is that, even if the ordinance is valid, mandamus will not lie to enforce it because the only remedy for the refusal of the Railway Company to construct any line required is by a forfeiture pro tanto of its franchise. The case of State v. Minnesota Southern R. Co. 18 Minn. 21 (40), is relied on in support of the contention.

That case was one in which the state sought to compel a railroad company, by mandamus, to construct its line to the village of La Crescent, and it was held that mandamus would not lie, because no complete and perfect legal obligation had ever been imposed upon the company to build the road. Such is not the case at bar, for, by the stipulations of section 18 of Ordinance No. 1227, a clear legal obligation was imposed upon the railway company to construct new lines as required therein, therefore mandamus will lie to enforce the obligation. State v. Minnesota Transfer Ry. Co. 80 Minn. 108, 83 N. W. 32, 50 L. R. A. 656.

The Railway Company also urges that the finding of the trial

court that public necessity requires the construction of the line in question, and that it is not a cross-town line, is not sustained by the evidence. It is clear from the record that the proposed line is not a cross-town line, even if it be conceded that such fact is here material. Whether public interest and necessity require the construction of a new line of railway upon any particular street upon which sewers have been constructed is a question resting in the discretion of the common council by virtue of section 18 of the Ordinance No. 1227. The court cannot interfere with the action of the council in ordering new lines unless such action is clearly arbitrary. The evidence in this case is sufficient to sustain the finding complained of.

The last assignment of error is this: "The court erred in making its findings of fact, conclusions of law, order for judgment, and decree herein, and in making each thereof, for the reason that the same are, and each of them is, contrary to and in violation of section 1 of article 14 of the amendments to the Constitution of the United States, and of section 10 of article 1 of the Constitution of the United States." There is no merit in this assignment, if our construction of section 1 of Ordinance No. 1227 is correct, and we hold that it is.

Judgment affirmed.