## STATE ex rel. CITY OF ST. PAUL v. ST. PAUL CITY RAILWAY COMPANY.[1]

June 20, 1913.

Nos. 18,045—(23).

**Street railway — ordering new line — ordinance construed.**

1. Section 18 of defendant's street railway franchise under which it operates a line of street railway in the city of St. Paul, the same being ordinance No. 1227 of that city, construed and *held* to justify the common council of the city in ordering the construction of a new line of street railway only where public convenience and necessity will be promoted thereby.

**Same — determination of city authorities final, ordinarily.**

2. The question whether public interests will be promoted to such an extent as to justify a new line or an extension of an existing line is legislative,

[1] Reported in 142 N. W. 136.

and the determination thereof by the municipal authorities is ordinarily final, in the absence of some provision in the law for a judicial review of the same.

**Same — presumption.**
3. An order for the construction of a new line of street railway, when made under the provisions of the ordinance referred to, is presumed to have been founded in public necessity, and also that the order imposes upon the street railway company no unreasonable requirement.

**Presumption not conclusive.**
4. The presumption of reasonableness is not conclusive, and the street car company is entitled to a hearing thereon in proceedings to enforce compliance with the order directing the new line to be constructed.

**Pleading — issue of reasonableness.**
5. Defendant's answer held, by the facts pleaded therein, to present an issue upon the question of reasonableness, and the demurrer of the city thereto should have been overruled.

Upon the petition of relator the district court for Ramsey county granted its alternative writ of mandamus, directing defendant railway company to forthwith construct a double track line of street railway, with all necessary appliances for the operation thereof, upon St. Clair street from West Seventh street to Oxford street, in the city of St. Paul, and to connect the tracks with those on West Seventh street, and when so constructed to run and operate cars over the same, or show cause why it had not done so. A portion of defendant's return to the writ is quoted in the opinion (see pages 169, 170, infra). The relator demurred to the answer and return of defendant. From an order directing a peremptory writ to issue, Dickson, J., defendant appealed. Reversed.

*N. M. Thygeson* and *W. D. Dwyer,* for appellant.
*O. H. O'Neill,* for respondent.

BROWN, C. J.
Proceedings in mandamus, brought by the city of St. Paul, to compel defendant to construct and operate an extended line of street railway in said city in compliance with ordinance No. 2905, approved May 7, 1910, by which the common council, acting under

section 18 of ordinance 1227, formally ordered the line constructed. Defendant interposed in defense, by way of answer: (1) That there was not public necessity for the construction of the new line, and that the ordinance commanding it was therefore unauthorized; and (2) facts tending to show that the action of the council in ordering the line constructed was arbitrary and unreasonable. The city interposed a general demurrer to the answer, which the court below sustained. Judgment was thereafter entered commanding and requiring the construction of the line, and defendant appealed.

Defendant is a street railway corporation, and by ordinance No. 1227, above referred to, was granted a franchise to construct and operate upon certain streets of the city lines of street railway. Defendant accepted the franchise and all the terms and conditions imposed by the ordinance and subsequently constructed its car tracks and now operates its cars upon said streets in accordance therewith. Section 18 of the ordinance provides as follows:

"The common council reserves and shall possess the right at any time, and from time to time after January 1, 1892, to order the construction and completion by said Saint Paul City Railway Company of any new lines of railway  *  *  *  upon any and all streets in the city of St. Paul, upon which sewers shall have been constructed, and all lines or extensions so ordered shall be constructed and in operation within one year after such orders are made; provided, that when such new lines or extensions are constructed, all the provisions of this ordinance shall apply thereto."

Ordinance No. 2905, being the order of the city council requiring the construction of the new line, proceeds as follows:

"That the St. Paul City Railway Company be and it is hereby ordered and required, under and pursuant to Ordinance No. 1227 of the city of St. Paul, approved Sept. 20, 1889, and more particularly under and pusuant to section 18 of said ordinance, and within the time therein required, to lay and construct a double track line of street railway, with all necessary poles, wires and appliances for the operation thereof, upon St. Clair street from West Seventh street to Oxford street, and to properly connect the tracks thereof with the present tracks upon West Seventh street, and when so constructed to run and operate cars upon and over the same."

It is contended by defendant that no public necessity exists to support the order requiring the construction of the new line and that the order, in view of the facts pleaded in the answer, is unreasonable and therefore void. While the city contends: (1) That the order was based upon the contract obligation created by section 18 of the franchise ordinance, and is not dependent for its support upon the question of public necessity; and (2) that the facts pleaded in the answer of defendant wholly fail to present an issue upon the question of reasonableness, or of arbitrary action on the part of the common council in ordering the extended line.

1. We sustain the contention of defendant that, to authorize an order requiring an extension of the street car service under section 18, the common council must first determine that public interests demand and require the proposed improvement, and that, if no public necessity exists in fact, the extension cannot lawfully be ordered. While the franchise ordinance and defendant's acceptance thereof constitute a contract between the city and defendant, obligating defendant to comply with the terms and provisions thereof, the basis for its support is found in an exercise by the city of its municipal police power, and the contract should be construed in the light of and in harmony with the principles of law upon that subject. The law vests in the city of St. Paul the control and supervision of the public streets therein, and the authority to permit and regulate the construction and operation of street railways thereon. Its authority and power in this respect was involved and exercised in the passage of the ordinance forming defendant's franchise, and the obligations and rights there imposed and reserved should be held as imposing and reserving obligations and rights arising from its police power. Such was undoubtedly the intention of the parties, and was the view taken by the court in State v. St. Paul City Ry. Co. 117 Minn. 316, 135 N. W. 976, and State v. St. Paul City Ry. Co. 78 Minn. 331, 81 N. W. 200, both of which involved section 18 here in question. In the last case cited Judge Mitchell, speaking for the court, said:

"How far and to what distance any of these lines shall be extended into this business or central portion of the city is, and must

of necessity be, a matter largely addressed to the judgment and discretion of the common council.   But if it was attempted to require the extension of the service of any line over a track on which another line was operated, entirely through the central portion of the city, out into a suburban district on the opposite side of the city, we apprehend that, unless there were some very exceptional circumstances creating a necessity for it, a court would very unhesitatingly hold that the common council had no authority, under either section 18, or the general police power, to require this to be done."

While it is probable that decisions of other courts may be found, in which a distinction is made in cases involving expressly reserved authority, such as that contained in section 18 of the ordinance in question, and those involving the general municipal authority implied by law, we are content with the rule as stated by our court, which we follow and apply; holding that the power reserved by section 18 of defendant's franchise may be exercised only when public interests require it.

2. It is however well settled that in the matter of the exercise of the police power all questions of propriety and public necessity, being legislative in character, are committed to the legislature or to such other inferior tribunals or boards as the exercise of the power may lawfully be delegated.   The determination of the question in that manner is ordinarily final, and not open to judicial review, except where expressly or by necessary implication it is so provided by law.   This is elementary.   It is also well settled that an order or determination by proper authority that public interests require a particular exercise of the police power is presumptively valid, not only as respects the question of public necessity, but the reasonableness of the order as well.   State v. St. Paul City Ry. Co. supra; Mayor, etc. v. R. Co. 133 N. Y. 104, 30 N. E. 563, 28 Am. St. 609; People v. Ry. Co. 134 Mich. 682, 97 N. W. 36, 63 L.R.A. 746, 104 Am. St. 626; Booth, Street Ry. § 224.

The rule is founded on the necessity of committing a wide discretion to the tribunal authorized to determine such questions, and the courts rarely interfere even in those cases where judicial review is provided for.   Nellis, Street Railways, § 121.   The presump-

tion applies to ordinances of municipal corporations regulating and controlling the construction and operation of street railways. Nellis, Street Railways, § 118. It applies to the case at bar, and under it we presume that the ordinance requiring the extended car line in question was founded upon a prior determination that public interests required its construction, and that the obligations thereby imposed upon defendant are not unreasonable. Mayor, etc. v. R. Co. supra.

3. This presumption of validity is not, however, conclusive. Public service corporations, or persons, subject to the performance of uncompensated duties for the public welfare, may not be proceeded against arbitrarily nor in an unreasonable manner. 1 Dunnell, Minn. Dig. § 1604. The question whether a particular act or thing required by the public authorities in this respect is arbitrary and unreasonable is a judicial question (Freund, Police Power, 63) and may be raised by the person proceeded against in any appropriate legal way, by affirmative action, or by way of defense in mandamus proceedings to compel the performance of the thing required. It is ordinarily one of fact to be heard and determined as other issues of fact are heard and determined, and the burden is upon the complaining party to establish the allegations of unreasonableness. Booth, Street Railways, § 224; Mayor, etc. v. R. Co. supra; State v. City of Trenton, 53 N. J. L. 132, 20 Atl. 1076, 11 L.R.A. 410; People v. Cregier, 138 Ill. 401, 28 N. E. 812.

4. In the case at bar we have only to determine whether defendant's answer, as against a general demurrer, presents an issue of unreasonableness. While section 18 authorized the city to require the construction of a car line upon any street in which a sewer has been laid, it would be manifestly unreasonable to require a line constructed upon all such streets, and an order of the city to that effect would not be sustained. St. Clair street, upon which the new line is required to be constructed, is supplied with a sewer, and, as we understand the claim of defendant, there are no residences or business buildings upon the greater part of the street covered by the proposed new line. The main purpose of the extended line is to accommodate people residing in territory tributary to St. Clair

street, between Avon and Oxford streets, and those residing in the vicinity of the terminus of the line at the latter street.

There can be no serious question but that the common council is authorized by section 18 to provide street car accommodations to the people residing in this section of the city, and if the proposed line is not manifestly unreasonable and unfair to defendant, the ordinance providing for the construction of the line must be sustained. But in determining the reasonableness of the requirement, consideration should not be limited exclusively to the propriety or necessity of accommodating those living at one end of the proposed line. The most feasible route to reach that section of the city, the difficulties to be encountered in constructing the line, if any, the comparative cost and expense of different routes, either of which would, if adopted, accomplish the desired object, should receive due consideration and attention. And though a mere difference of expense of construction should not be the sole guide in selecting the route, that fact is entitled to weight, in connection with all the facts and surrounding circumstances. The defendant is entitled to fair treatment, and the reasonable demands of the city should promptly be responded to by defendant. In reference to the question whether an issue of unreasonableness is presented by the answer, we can do no better than to quote from the allegations made therein. The answer alleges, among other things:

"Defendant specifically alleges that St. Clair street from, approximately, its easterly terminus to, approximately, Avon street, runs along the middle of a steep declivity and hill, so that access to St. Clair street is practically impossible from the territory upon either side of the street, and, for that reason, that portion of a street railway line upon St. Clair street, would receive but little patronage and would be of little use, if any, to the traveling public. That on the south side of said proposed line of railway, from West Seventh street to Victoria street, * * * is vacant and unoccupied property. That at the westerly terminus of the proposed line of railway there is a considerable population, but this population could be best served, and would be naturally tributary to a line connecting with the present Grand Avenue line, and such a line would be only a few

blocks long and would only cost a small part of the cost of construction of the proposed St. Clair street line, and would better serve the public need; and for that reason, defendant specifically alleges that there is no public need or necessity for the construction and operation of a street railway line upon St. Clair street. * * * That the construction and operation of said line would necessarily involve an expenditure of many thousands of dollars by said defendant with no corresponding income or return therefrom. That the construction and operation of said street car line would not yield sufficient revenue or income to said defendant to pay the actual and necessary expenses of running and operating the same, and its construction and operation and the cost thereof would be a total loss and waste investment to the defendant, and deprive it of its property for no public use and without compensation."

The answer further alleges that if defendant be required to construct the proposed line the result thereof would not benefit the public, and, on the contrary, would deprive defendant of its property without due process of law and in violation of its constitutional rights. These allegations are of course conclusions of law, and we do not set them out in full. The portions of the answer quoted, however, set forth issuable facts, and bear directly upon the question of the reasonableness of the order for the construction of the proposed line. While the allegations are not as complete and specific as they might perhaps have been made, we are of opinion, within the rule guiding the determination of the sufficiency of pleadings when challenged by general demurrer, (2 Dunnell, Minn. Dig. § 7724) that an issue in respect to the question of reasonableness is presented, and should be determined as other issues of fact are determined. The order of the court below sustaining the demurrer to the answer will therefore be reversed, and the cause remanded for trial.

Order reversed.

BUNN, J., took no part.