CITY OF OWATONNA v. CHICAGO, ROCK ISLAND &
PACIFIC RAILWAY COMPANY.[1]

October 19, 1923.

No. 23,507.

**Gates at railway crossings—error to strike out parts of an answer.**

In a proceeding in mandamus to compel defendant to provide gates and gatemen for the protection of travelers at certain street crossings, it was error to strike from the answer averments to the effect that other less expensive devices were more effective, and that a viaduct in course of construction would divert from these crossings more than nine-tenths of the present traffic.

Upon the relation of the city of Owatonna the district court for Steele county granted its alternative writ of mandamus commanding the Chicago, Rock Island & Pacific Railway Company to construct and maintain suitable and sufficient railroad crossing gates and provide them at all times with competent operators and attend-

[1]Reported in 195 N. W. 452.

ants. From an order, Childress, J., granting petitioner's motion to strike out certain portions of the return and answer, as sham, defendant appealed. Reversed.

O'Brien, Stone, Horn & Stringer, for appellant.

W. F. Sawyer, City Attorney, for respondent.

TAYLOR, C.

Plaintiff sued out an alternative writ of mandamus requiring defendant to install crossing gates where its tracks cross two streets of the city known as Rose street and Bridge street, and to provide operators at all times to attend to and operate such gates, or show cause why it should not do so. The writ recites that plaintiff is a city of about 8,000 inhabitants operating under a home rule charter; that defendant operates a line of railroad through the city and maintains therein a depot for receiving and discharging passengers and freight; that Rose street is the first street north, and Bridge street the first street south, of such depot; that the places where these streets cross defendant's tracks are especially dangerous and are unguarded; that the travel over these crossings is heavy; that on February 7, 1922, the city passed an ordinance requiring defendant, within 120 days thereafter, to install and maintain suitable crossing gates at such crossings, and to provide competent operators at all times to attend to and operate the same, and that defendant has failed and refused to do so.

Defendant answered, putting in issue the charge that the crossings were dangerous, and asserting that the ordinance is arbitrary, oppressive and unreasonable, especially that portion of it requiring defendant to provide operators at all times to attend to and operate the gates, and that compelling defendant to install such gates and provide such operators will deprive it of its property without due process of law. In its answer defendant offered to install electric flash light signals at these crossings and keep them in operation both day and night, or to maintain flagmen at such crossings at all reasonable hours. It alleged that experience had demonstrated that such signals were more effective than gates in preventing accidents, and that they could be installed, maintained and operated for a

small part of the expense of installing, maintaining and operating gates. Defendant further alleged that its tracks are at the western edge of the city with only a few scattered houses located west of them; that 95 per centum of the traffic over these crossings is traffic passing through the city over three state highways, and that the local traffic over them is confined mainly to those going to and from defendant's depot. Defendant further alleged that the state highway commission, for the purpose of eliminating grade crossings, was constructing a viaduct over defendant's tracks at a point about two blocks north of Rose street, and had relocated the three state highways so that they would pass over this viaduct when completed; that the city, by resolution, had approved the plans of the highway commission; that defendant had obligated itself to pay $22,688.98 toward the construction of the viaduct, and that at least 95 per centum of the traffic now possing over the crossings in question will be diverted therefrom and pass over this viaduct when it is completed. The above is a brief outline of the matters set forth in the pleadings.

On motion of plaintiff the court struck from the answer the entire portion thereof relating to flash light signals, and the entire portion thereof relating to the viaduct and the relocating of the state highways. Defendant appealed from this order.

The order seems to have been based on the ground that matters arising after the issuance of the alternative writ could not be taken into consideration in determining whether a peremptory writ should issue, and on the further ground that the facts and conditions set forth in the parts of the answer stricken could not be taken into consideration in determining whether the ordinance was arbitrary, oppressive and unreasonable.

When a court is asked to exercise the extraordinary power of mandamus, it is not limited to a consideration of the facts and conditions as they existed at the time the proceeding was initiated, but should take into consideration the facts and conditions existing at the time it determines whether a peremptory writ should issue. Dexner v. Houghton, 153 Minn. 284, 190 N. W. 179, and cases there cited.

Defendant had the right to allege and prove any facts or circumstances which the court could properly take into consideration in determining whether the requirement that defendant install gates at these crossings and keep gatemen there at all times to operate them, is arbitrary, oppressive or unreasonable. State v. St. Paul City Ry. Co. 122 Minn. 163, 142 N. W. 136. Defendant should be permitted to prove, if it can, that the safety devices which it offered to provide are more efficient than gates in protecting the traveling public; that safety devices equally as effective as gates can be provided and maintained at much less expense, and that the completion of the viaduct and the rerouting of the state highways will divert travel from these crossings to such an extent that the city would not be justified in imposing on defendant the burden of installing and operating gates. Any facts tending to prove these claims should be taken into consideration in determining whether the requirement that gates be provided and operated at all times is arbitrary or unreasonable, and it was error to strike the averments under which such facts could be proven.

Order reversed.

STONE, J., having been of counsel in the trial court, took no part.