STATE EX REL. CITY OF DULUTH v. DULUTH STREET RAILWAY COMPANY.

EAST DULUTH COMPANY AND OTHERS, INTERVENERS.[1]

March 21, 1930.

Nos. 27,707, 27,708.

[1]Reported in 229 N. W. 883.

*Mitchell, Gillette & Carmichael,* for appellant Duluth Street Railway Company.

*Abbott, MacPherran, Dancer, Gilbert & Doan,* for appellants Alworth, Miller, Nolan, Silliman, Spencer and Spring.

*Bert W. Forbes,* City Attorney, and *Leonard McHugh,* for respondent.

WILSON, C. J.

The state of Minnesota on the relation of the city of Duluth seeks by mandamus to force the Duluth Street Railway Company to build a double track extension on East Fourth street in said city extending from Wallace avenue (Twenty-seventh avenue east) northeasterly 2,700 feet to Ridgewood Road. Certain property owners opposing the extension filed a complaint in intervention. The trial court directed the issuance of a peremptory writ of mandamus directing the street railway company to so extend its line. From an order denying a joint motion for a new trial, the defendant and the interveners have separately appealed.

On June 11, 1928, the city council by a three to two vote adopted a resolution declaring that "public convenience and necessity" required the extension to be made. Authority for the resolution is found in L. 1921, p. 328, c. 278, § 4, G. S. 1923 (1 Mason, 1927) § 4819. Under proper conditions the authority is conceded. The claim of the appellants is that the resolution is arbitrary and unreasonable and not based upon public convenience and necessity.

There is a blueprint map in the back of the record showing the area and territory involved. Fourth street and other streets lie

northeasterly and southwesterly. The avenues intersect at right angles. For convenience we will refer to the streets as lying east and west and the avenues as north and south. East Fourth street has double street car tracks going east to a point immediately to the east of Twenty-seventh avenue where these tracks turn to the north at an angle of about 45 degrees onto Wallace avenue, which extends in that general direction for more than one-half mile beyond.

Superior street parallels East Fourth street four blocks to the south for the full distance of the territory involved. Car lines are on Twenty-fourth avenue connecting the two lines mentioned. There are only 26 dwellings within a half a mile of the proposed extension and not within a quarter of a mile of an existing car line. There are only three residences within such area as much as one block nearer to the proposed extension than to an already existing car line. The 26 residences perhaps contain 130 inhabitants. Six of the inhabitants who own homes intervened.

The ground on the south side of East Fourth street between Twenty-seventh avenue and Twenty-ninth avenue is used by the Holy Rosary church and school. Their building is on a part thereof. Immediately to the east and across Twenty-ninth avenue is the east junior high school. Its building is about two blocks from the existing car line. The school grounds extend easterly about 700 feet to Hawthorne Road, beyond which is the Alworth home, next to which is Congdon Park. This park apparently extends from Superior street northerly almost to Wallace avenue but is only about 400 feet in width. It is in its native state and includes a ravine draining to the east. All the lands in the territory slope to the east. The next thoroughfare east of the park is Ridgewood Road, the end of the proposed extension. Along the north side of the proposed extension are excellent homes. Beyond the end of the proposed extension and to the north is a vast undeveloped territory.

The cost of construction of the proposed extension would be approximately $44,000. The cost of such additional equipment as would be required for operation would be approximately $15,000.

The annual loss in operation would be not less than $10,000. Defendant's plant is valued at approximately $5,500,000, and for several years it has produced 3.30 to 4.87 per cent annual net return.

In this case there was not a single resident of the area affected who testified the extension was necessary or even wanted. A large number of those there owning homes were called as witnesses, and each of them testified that the line was not necessary, that they did not wish it and would not patronize it. None of these witnesses testified that the extension was a necessity. There is little that can be said as to necessity as the uncontroverted facts speak quite forcibly for themselves. It is not now seriously urged that public necessity arises out of the undeveloped territory beyond the end of the proposed extension.

"Necessity" as here used means now or in the near future. In re Staten Island R. T. Co. 103 N. Y. 251, 8 N. E. 548; Warden v. Madisonville H. & E. R. Co. 128 Ky. 563, 567, 108 S. W. 880. "Necessary" does not mean that a thing will possibly be needed at some remote time in the future. Port of Everett v. Everett Imp. Co. 124 Wash. 486, 493, 214 P. 1064. Indeed, "public necessity" in such measures should be construed as meaning urgent public convenience. Commonwealth v. Gilligan, 195 Pa. 504, 46 A. 124. Speculative purposes will not support the assertion of necessity. We have here the rather unique situation of the council directing an extension into a territory wherein the inhabitants do not wish it. Naturally, those interested in and owning the undeveloped territory beyond would be pleased to have the extension as a means by which their territory might be developed. Some members of the council may have been in sympathy with such thought. The principal witnesses for the city seem to have been actuated by the thought that it was the pavement that was needed rather than the car line (a companion petition for paving was granted) and that both could be advantageously placed preparatory to the future development of the unused territory.

The principal argument in support of the action of the council perhaps rests upon the assertion that the proposed extension is a public necessity because of the church and the high school. But it

would seem that the existing lines turning onto Wallace avenue give substantially the same service to the church; and we are unable to grasp the view of an existing necessity requiring the expenditure of so much money under the circumstances and building a line 2,700 feet to save school children a walk of about 700 feet. It is quite a common understanding that a moderate amount of walking is beneficial to all of us, including school children. Some school children now walk four blocks from the Superior street car line.

It is also an established fact in the record that the defendant has been and is ready to make a loop in East Fourth street at Wallace avenue that would bring the cars within about 300 feet of the church. Perhaps the city could properly require this. Possibly the city could also require cars which stop at Twenty-fourth avenue and East Fourth street to run to Twenty-seventh avenue. Each of these suggestions would depend upon the merits involved. Such requirements would have been more reasonable, under the circumstances, and would have been much less burdensome to the none too prosperous street railway company. See City of Owatonna v. C. R. I. & P. Ry. Co. 156 Minn. 475, 195 N. W. 452; State ex rel. City of St. Paul v. St. Paul City Ry. Co. 122 Minn. 163, 142 N. W. 136.

Experience has shown the necessity of governmental regulation and supervision of public utilities such as the defendant. Great power is vested in municipal authority. The public interest requires this. On the contrary, those vested with such authority and power must be actuated by a desire to be fair and just. They cannot act unreasonably or arbitrarily. State ex rel. City of St. Paul v. St. Paul City Ry. Co. 117 Minn. 316, 135 N. W. 976, Ann. Cas. 1913D, 139; M. P. Ry. Co. v. City of Omaha, 235 U. S. 121, 35 S. Ct. 82, 59 L. ed. 157; People ex rel. N. Y. & Q. Gas Co. v. McCall, 245 U. S. 345, 38 S. Ct. 122, 62 L. ed. 337. The determination of such questions as here involved by municipal authority is presumptively valid. State ex rel. City of St. Paul v. St. Paul City Ry. Co. 117 Minn. 316, 135 N. W. 976, Ann. Cas. 1913D, 139.

Upon a consideration of all the evidence in the case, we reach the conclusion that it clearly appears that public convenience and neces-

sity did not require the construction of the proposed extension and that the order therefor was arbitrary and unreasonable. Hence the writ should not issue. The following authorities have some tendency to support our conclusion: State ex rel. City of St. Paul v. St. Paul City Ry. Co. 122 Minn. 163, 142 N. W. 136; Lawton v. Steele, 152 U. S. 133, 14 S. Ct. 499, 38 L. ed. 385; Dobbins v. Los Angeles, 195 U. S. 223, 25 S. Ct. 18, 49 L. ed. 169; Washington ex rel. Oregon R. & N. Co. v. Fairchild, 224 U. S. 510, 32 S. Ct. 535, 56 L. ed. 863; State ex rel. Willapa Elec. Co. v. Public Service Comm. 117 Wash. 510, 201 P. 749; Standard Oil Co. v. City of Kearney, 106 Neb. 558, 184 N. W. 109, 18 A. L. R. 95; D. L. & W. R. Co. v. Van Santvoord (D. C.) 232 F. 978; New York ex rel. Woodhaven G. L. Co. v. Public Service Comm. 269 U. S. 244, 46 S. Ct. 83, 70 L. ed. 255; Ohio Valley W. Co. v. Ben Avon Borough, 253 U. S. 287, 40 S. Ct. 527, 64 L. ed. 908; N. P. Ry. Co. v. Dept. of Public Works, 268 U. S. 39, 45 S. Ct. 412, 69 L. ed. 836; Banton v. Belt Line Ry. Corp. 268 U. S. 413, 45 S. Ct. 534, 69 L. ed. 1020. We need not discuss the other questions covered by the briefs.

Reversed.

