## STATE EX REL. CITY OF MINNEAPOLIS v. MINNEAPOLIS STREET RAILWAY COMPANY.[1]

December 26, 1952.

No. 35,995.

[1]Reported in 56 N. W. (2d) 564.

*Clarence O. Holten* and *James E. Dorsey,* and *Dorsey, Colman, Barker, Scott & Barber,* for appellant.

*John F. Bonner,* City Attorney, and *Carsten L. Jacobson,* Assistant City Attorney, for respondent.

MAGNEY, JUSTICE.

Appeal from a judgment entered pursuant to an order of the district court of Hennepin county directing on the pleadings the issuance of a peremptory writ of mandamus to compel the Minneapolis Street Railway Company forthwith to restore the streetcar schedules and service on certain of its lines to those in effect as of May 4, 1950.

The parties will be referred to herein as the city and the company.

The petition for an alternative writ of mandamus and the writ itself set out substantially the following facts. The company as of May 4, 1950, had established and was maintaining a system of streetcar routes and schedules of its own choice. The city council on May 4, 1950, adopted the following resolution:

"The City Council hereby fixes and establishes as regular routes and schedules those regular routes and schedules being maintained by the Minneapolis Street Railway Company as of May 4, 1950. The Company shall not change, amend, curtail or discontinue any of its regular street car routes or schedules in effect on May 4, 1950, until and unless the City Council shall approve such change, amend-

ment, curtailment or discontinuance, after notice given as hereinafter provided. Such notice must be filed with the City Council at least fourteen days prior to the time when said company desires to put into effect any proposed amendment, change, curtailment or discontinuance in street car routes, or schedules, and shall contain the reasons why such amendment, change, curtailment or discontinuance is necessary."

On or about May 8, 1950, the company was notified of the adoption of the resolution and served with a copy thereof. According to the petition and writ the company, subsequent to May 4, 1950, violated the provision of the resolution by curtailing, discontinuing, amending, and changing its regular streetcar routes and schedules on certain specifically described lines without the consent or approval of the council. The council thereupon on January 11, 1952, adopted a resolution declaring that the service on such lines, which had been curtailed, discontinued, amended, or changed without the approval of the council, should be restored to the service as of May 4, 1950, by February 1, 1952, and that no further changes, amendments, curtailment, or discontinuance in service should be made without the consent of the council. The company was notified of the council's action. The petition and alternative writ further set out that the council, since its action of May 4, 1950, has not consented to or approved of any curtailment, discontinuance, amendment, or change by the company in the service of any of the streetcar lines specifically mentioned except when the council on June 9, 1950, took action to grant the request of the company for discontinuance of certain owl service on the Lake street line. It is alleged that, notwithstanding such lack of consent or approval and in violation of the council's action of May 4, 1950, the company has curtailed, discontinued, amended, and changed the service and has failed and neglected to operate thereon a sufficient number of cars to fully comply with all schedules required by the council or to adequately accommodate the traveling public and in these and other respects has failed and neglected to furnish reasonable and adequate service and facilities for the accommodation of the traveling public.

In its return and answer to the alternative writ of mandamus, the company admits that the city council on January 11, 1952, adopted the resolution above referred to and that it was notified thereof. It alleges that the schedules in effect on the six streetcar lines described in the writ, which were in effect on May 4, 1950, were not new schedules as of that date but had been in effect for substantial periods of time, varying as to each line, prior to May 4, 1950; that the said schedules were suited to the transportation needs of the number of passengers riding said lines on or about the times when such schedules were adopted; that, as to each of said streetcar lines, the number of passengers riding thereon from month to month commencing with the date of the adoption of the schedules in effect as of May 4, 1950, has shown a steady and large decline up to and including the date of the return; and that *schedules reasonable and appropriate as of the date of their adoption and in effect as of May 4, 1950, would, if in effect now without change, be wholly unreasonable, would constitute service and facilities greatly in excess of that required to be reasonable* and adequate for the present number of passengers thereon, would result in great loss to the company, and would be confiscatory of its property without due process of law. The company further alleges that it has from time to time, from and after May 4, 1950, made changes in its schedules on each of said streetcar lines; that the city has been notified thereof and has taken no action to approve or disapprove the same except in the case of the owl service on the Lake street line; that the failure of the city to take action or disapprove of said change had the legal effect of approving the same; and that each of said changes has been appropriate and proper in connection with the number of passengers as they existed at the time of such changes and has resulted at all times in reasonable schedules within the scope of M. S. A. 220.09. It further alleges that, commencing sometime after August 1945, there has been a general decrease nationally and in the company's business in the number of passengers riding metropolitan mass transportation facilities and that this decline in number of passengers has been due largely to the rapid increase

of passenger automobiles, to the general adoption of the five-day work week, to the increase in domestic television and the decrease in attendance at movie theaters, to the increase in outlying suburban shopping centers, to the increase in the number of outlying churches, to the expiration of the veterans' educational program, and to other economic factors. The company further alleges that the riding public on each of said streetcar lines is now adequately served by the schedules at present in effect; that the restoration of schedules in effect as of May 4, 1950, would cost a large amount of money and the cost of operations of such additional schedule would be greatly in excess of any additional revenue that could be derived therefrom; that restoring schedules in effect on May 4, 1950, *is unnecessary, arbitrary, and unreasonable;* that compliance as of the present time with its purported requirements would deprive the company of property without due process of law; and that its enforcement will be in violation of constitutional provisions. The company alleges that it is not now earning, and for several years last past it has not earned, *a reasonable return on the fair value of its property used and useful* in the conduct of its business and that the issuance of a peremptory writ as prayed for would result in a substantial increase in the amount by which the defendant will be unable to make such a fair return, thereby resulting in additional and substantial continued confiscation of its property, contrary to law.

The city moved the court for an order for judgment in its favor on the pleadings for the relief prayed for in the petition, namely for a peremptory writ of mandamus, on the ground that the company in its return and answer has not pleaded or asserted any defense to the city's right to relief so prayed for and specified.

On June 27, 1952, the court granted the city's motion for judgment on the pleadings. It ordered that a peremptory writ of mandamus issue out of the court commanding that the company forthwith restore the streetcar schedules and service on the specific lines mentioned to those in effect as of May 4, 1950. The company appeals from the judgment entered upon said order.

In a memorandum accompanying the order, the court stated:

"A stay of the order herein is granted to give the respondent [the company] an opportunity, if it so desires, to petition the city council for a hearing with respect to matters recited in its answer and return, or to follow such other procedure as it may deem advisable. The Court is of the view that the council resolution of May 4, 1950, approving the respondent's regular routes and schedules and establishing a procedure for the consideration of changes therein, was not unreasonable. Respondent failed to follow that procedure. The Court does not hold that respondent has no right to test the reasonableness of the order of the city council in the light of present conditions, but that it is under the duty to make application to the council before seeking relief from the courts."

In this action, the city seeks to compel the company to establish certain streetcar schedules which were in effect on May 4, 1950. It was successful in the lower court. The company by this appeal seeks to have the judgment entered in the district court, granting judgment on the pleadings, reversed and to have the case remanded for trial on its merits.

 Since the court ordered judgment on the pleadings in favor of the city, the allegations of the answer interposed by the company must be accepted as true and stand as admitted. State ex rel. Erickson v. Magie, 183 Minn. 60, 235 N. W. 526, 84 A. L. R. 1111. Also, on a motion for judgment on the pleadings, the pleading attacked will be given a most liberal construction, even more so than on a demurrer. 2 Pirsig's Dunnell, Minn. Pl. (3 ed.) § 1660. The reason for a more liberal construction of the pleading on such a motion is stated in Ames v. Brandvold, 119 Minn. 521, 138 N. W. 786. See, also, Bell v. Friedman, 161 Minn. 406, 201 N. W. 614; Gostomezik v. Gostomezik, 191 Minn. 119, 253 N. W. 376.

██ In the recent case of Minneapolis St. Ry. Co. v. City of Minneapolis, 229 Minn. 502, 40 N. W. (2d) 353, the history of the company and its obligations were covered in detail. Also the power and authority of the city and the Minnesota railroad and ware-

house commission over the company were fully discussed. There is no need to cover the same ground.

Chapter 12, § 2, of the charter of the city of Minneapolis (Minneapolis City Charter and Ordinances [Perm. ed.]) states:

"* * * *The Council shall have power to regulate reasonably* construction and *operation* and may, from time to time, require reasonable improvements and *service.*" (Italics supplied.)

Section 12 of the original franchise of the company (Minneapolis City Charter and Ordinances [Perm. ed.] 61:1-12) sets out:

"*It shall be the duty of such company to furnish and run a sufficient number of cars to accommodate the traveling public* on all streets which they shall use or occupy for railroad purposes." (Italics supplied.)

And in the so-called Brooks-Coleman Act, L. 1921, c. 278, § 4 (M. S. A. 220.09), it is provided:

"* * * The council shall have authority to prescribe *reasonable requirements,* * * * *of service* and operation * * * and shall have the right at all times and in all respects to exercise *reasonable control over such service and operation* and * * * the right to fix and amend service schedules, * * * and such street railway shall * * * in these [enumerated requirements] and all other respects furnish reasonable and adequate service * * *." (Italics supplied.)

Thus it appears clearly from the original franchise, the charter of the city, and the provisions of the Brooks-Coleman Act that all regulatory measures must be based on reasonableness.

In view of the above stated legal propositions, namely, that where the court orders judgment on the pleadings the allegations of the answer must be accepted as true and stand as admitted and further that on a motion for judgment on the pleadings the pleading attacked will be given a most liberal construction, we must examine the allegations of the answer and determine what facts must be accepted as true and stand as admitted. The answer first alleges

that the schedules in effect on May 4, 1950, had been in effect for substantial periods of time prior to that date and were suitable and sufficient at the time they were adopted. These facts must be accepted as true and stand as admitted. The answer alleges that the passenger volume has suffered a general and steady decline since May 1950, and that, therefore, *the May 4, 1950, schedules are wholly unreasonable* and in excess of reasonable and adequate requirements of present passenger volume and would result in loss to the company and confiscation of its property if enforced today. These facts must be accepted as true and stand as admitted. The answer alleges that commencing sometime after August 1945 there has been a general decrease in the number of passengers carried by the company. This fact must be accepted as true and stand as admitted as well as the facts pleaded in detail giving the reasons for such decreased travel. The answer pleads that the public is adequately served by the present schedules; that a change back to the schedules in effect on May 4, 1950, would be expensive and not compensatory; that public necessity or convenience would not be served by such change; that the enforcement of the May 4, 1950, resolution would confiscate the company's property without compensation; and that the resolution of the council serves no public purpose and is unnecessary, arbitrary, and unreasonable. The facts above pleaded must be accepted as true and stand as admitted. The answer also alleges that the company is not now earning a reasonable return and the enforcement of the resolution would render its return even less and would constitute substantial continued confiscation of its property contrary to law. The facts pleaded must be accepted as true and stand as admitted.

Having in mind the above pleaded facts, which must be accepted as true and stand as admitted, and having also in mind the provisions of the original franchise, the city charter, and the Brooks-Coleman Act, which provisions we have already quoted, and which limit the regulatory power of the city to such requirements as are reasonable, it is apparent to us that the court, in ordering judgment on the pleadings, overstepped its power. There can be no doubt that

the company has pleaded unreasonableness sufficiently, and thus it has raised a question of fact which must be tried on its merits and which cannot be disposed of by ignoring it and ordering judgment on the pleadings. The *reasonableness* of the action of the city in the light of present conditions, in view of the allegations of the return and answer, will have to be determined on evidence. The company concedes, as of course it must, that the city has authority to prescribe reasonable requirements, standards, and conditions of service and operation and the right to exercise reasonable control over such service and operation, including the right to fix and amend service schedules. Its complaint is that the city, in its present proposed regulation, is violating the rule of reasonableness.

The regulation of streetcar schedules and service comes within the field of police power regulation. In Minneapolis St. Ry. Co. v. City of Minneapolis, 229 Minn. 513, 40 N. W. (2d) 360, we said:

"* * * such power may be, as was done here, contractually restricted to the field of police power regulation, which is always subject to a judicially enforceable standard of *reasonableness."* (Italics supplied.)

In State ex rel. City of St. Paul v. St. Paul City Ry. Co. 122 Minn. 163, 142 N. W. 136, the city of St. Paul brought an action in mandamus to compel the railway company to comply with an ordinance of the city directing the construction of a new line. The city demurred to the company's answer. This court said (122 Minn. 168, 142 N. W. 138):

"In the case at bar we have only to determine whether defendant's answer, as against a general demurrer, presents an issue of unreasonableness."

We said that an order or determination by proper authority that public interests require a particular exercise of the police power is presumptively valid not only as respects the question of public necessity but the reasonableness of the order as well. This presumption of validity, however, is not conclusive.

"* * * The question whether a particular act or thing required by the public authorities in this respect is arbitrary and unreasonable is a judicial question * * * and may be raised by the person proceeded against * * * by way of defense in mandamus proceedings to compel the performance of the thing required." (122 Minn. 168, 142 N. W. 138.)

This court further said that the burden was upon the complaining party to establish the allegations of unreasonableness but that in that instant case, the court was required only to determine whether defendant's answer, as against a general demurrer, presented an issue of unreasonableness. We then said (122 Minn. 170, 142 N. W. 138) :

"* * * While the allegations are not as complete and specific as they might perhaps have been made, we are of opinion, within the rule guiding the determination of the sufficiency of pleadings when challenged by general demurrer, (2 Dunnell, Minn. Dig. § 7724) that an issue in respect to the question of reasonableness is presented, and should be determined as other issues of fact are determined."

The allegations in the company's answer in the instant case are almost identical to those pleaded in the above case. See, also, State ex rel. City of St. Paul v. St. Paul City Ry. Co. 117 Minn. 316, 135 N. W. 976, Ann. Cas. 1913D, 139. In State ex rel. City of Duluth v. Duluth St. Ry. Co. 179 Minn. 548, 552, 229 N. W. 883, 884, we said:

"* * * On the contrary, those vested with such authority and power must be actuated by a desire to be fair and just. They cannot act unreasonably or arbitrarily. * * *

"Upon a consideration of all the evidence in the case, we reach the conclusion that it clearly appears that public convenience and necessity did not require the construction of the proposed extension and that the order therefor was arbitrary and unreasonable. Hence the writ should not issue."

The answer alleges that the company made certain changes in its schedule after May 4, 1950, that in each instance it notified the

council of the proposed changes, and that, with the exception of one change which was approved, no action was taken by the council to approve or disapprove the changes. These facts must be taken as true and admitted. The city in effect admits that it was served with a notice of all proposed changes but contends that the company failed in these notices to give the reasons for the proposed changes. The sole allegations of the violation of the resolution is to the effect that the company changed certain schedules without first obtaining the consent of the council. The resolution of May 4, 1950, provides that the notice shall contain the reasons why an amendment, change, curtailment, or discontinuance is necessary. The reasons for the changes are to be contained in the notice and are a part of the notice. The allegation of the answer that a notice was served in every case of a contemplated change must, under the rule of liberality, be held to have been a proper sufficient notice. The city nowhere alleges that the notices failed to contain the reasons. It must stand admitted, therefore, that a notice in compliance with the resolution was served in each case where a desired change was contemplated. The company, therefore, complied with all the provisions of the May 4, 1950, resolution. The only noncompliance was on the part of the city council which failed to act.

The answer also alleges that each of such changes has been appropriate and proper in connection with the number of passengers at the time of the change. This fact must be taken as true and stand admitted.

The trial court was, therefore, mistaken when it stated in its memorandum that the company failed to comply with the procedural requirement of the May 4, 1950, resolution. Under the pleadings, all procedural requirements were complied with by the company.

The company contends that the failure of the city to take action to approve or disapprove each application as it came up had the legal effect of approving the same. The city certainly did not disapprove each application for change of schedule as it came in and its approval of, or consent to, each application can be argued only

on the basis of inaction. It does not seem necessary to make a determination on that point since the resolution adopted on January 11, 1952, by the city council was in effect a lump belated disapproval of all changes of schedule which had been made for the lines therein designated. It disapproved of all the changes and also ordered the company to restore the schedules in effect on May 4, 1950. That brings us back to the same question of the reasonableness of the city's action in the light of present conditions as disclosed in the company's return and answer. The fact that the company had operated under different schedules in the meantime, a fact of which the city must have been aware, can have little bearing on the basic issue involved. The disapproval of the company's schedules on January 11, 1952, by the order restoring the schedules in effect on May 4, 1950, under the pleadings as we have them here, raises the question of unreasonableness, which must be tried on its merits. The trial court was aware of this situation, because in its memorandum it stated that it "does not hold that respondent [the company] has no right to test the reasonableness of the order of the city council in the light of present conditions, * * *." It was concerned with procedure only.

As has been pointed out, the answer and return raise the issue of unreasonableness. That issue cannot be disposed of by an order granting judgment on the pleadings but must be determined on evidence presented. If the company, under the rules, fails to substantiate its allegations, then, of course, a writ should issue.

For reasons stated, we are of the opinion that the court erred in granting judgment on the pleadings.

Judgment reversed.