## STATE v. LOUIS ROSENSTEIN.[1]

### January 21, 1921.

### No. 22,112.

**Municipal ordinance prohibiting lumber-yards.**

1. An ordinance of the city of Minneapolis adopted March 14, 1916, prohibiting the location and operation of lumber-yards within the city without the consent of the city council, is not arbitrary nor unreasonable, and violates none of the constitutional rights of those engaging in business of that character.

**Same.**

2. The enactment of the ordinance is authorized by subdivision 46 of section 5, chapter 4 of the city charter.

**Subsequent extension of lumber-yard.**

3. The enlargement subsequent to the enactment of the ordinance

[1]Reported in 181 N. W. 107.

of an existing lumber-yard, to the extent and in the manner stated in the opinion, without permission from the city council, constitutes a violation of the ordinance.

**Estoppel against offender claiming discrimination.**

4. A person violating the ordinance cannot be heard to urge in defense a claim that the city council, in refusing a permit, acted arbitrarily and discriminated against him.

**Violation of ordinance not defendant's remedy.**

5. Whatever remedy may be available in the correction of arbitrary discrimination of the kind stated, it is not found in a defiance of the law by a commission of the prohibited act.

Defendant was charged with the violation of a city ordinance, tried in the municipal court of Minneapolis before Baldwin, J., and found guilty and ordered to pay a fine of $50 or in default thereof be imprisoned in the work house for a term not exceeding 50 days. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*Josiah E. Brill,* for appellant.

*C. D. Gould, J. T. O'Donnell* and *William L. Crawhall,* for respondent.

BROWN, C. J.

Defendant was convicted in the municipal court of the city of Minneapolis of the violation of a city ordinance and appealed from an order denying a new trial.

The material portion of the ordinance charged to have been violated, adopted by the city council on March 14, 1916, provides in substance as follows:

Section 1. No person shall hereafter install or open any lumber-yard or erect any building for the sale or storage of lumber within the city of Minneapolis without the consent of the city council.

Subsequent sections provide for the issuance of permits on application to the city council.

It appears from the record that prior to the passage of the ordinance defendant was a dealer in new and second-hand lumber and building

material, the second-hand material being in the main wreckage from demolished or otherwise destroyed buildings. His business had grown to such an extent that in 1919, subsequent to the date of the ordinance, it became necessary to enlarge his business premises. To that end he secured a block of land on the opposite side of the street from the existing yard, and installed therein in piles and otherwise lumber and material of the character used in his business. The new premises were somewhat larger than the old, but no buildings were erected thereon; the business being conducted from an office situated on the old premises which were not abandoned. On August 6, 1919, he applied to the city council for a license or permit to carry on and conduct the business upon the new premises, which, after due consideration, was denied. Notwithstanding the action of the council and its refusal to grant a permit, defendant continued to operate and conduct his business upon the new premises, in violation of the terms of the ordinance referred to, and was prosecuted and sentenced to pay a fine of $50.

It is contended by defendant in support of the appeal: (1) That the city council was without authority to enact the ordinance; (2) conceding the authority, that the ordinance is arbitrary and unreasonable, and therefore unconstitutional and void; and (3) that the trial court erred in excluding certain evidence tendered by defendant for the purpose of showing that, in denying his application for a license or permit, the city council arbitrarily discriminated against him.

1. The contention that the city council was without authority to enact the ordinance is not sustained. Subdivision 46 of section 5, chapter 4, of the city charter provides, among other things, that the city council shall have full power and authority

"To regulate the piling of lumber, shingles or lath in said city, and to require any person maintaining any lumber, shingle and lath pile or mill wood yard in said city to remove the same when the same is or may become dangerous to any building, buildings or other property near the same; * * * Provided, however, that nothing herein contained shall interfere with the limits within [which] such lumber, shingles, lath and mill wood and piles may not be piled as now established by ordinance of said city, or with the fire limits of said city, as now ex-

149 M.—9.

isting or which may hereafter be established by ordinance [of] said city." Sp. Laws 1889, p. 697, c. 82, § 1.

It cannot seriously be doubted that the matter of the location, and to an extent the condition and care of lumber-yards, where large quantities of lumber and building material are accumulated in piles and tiers of piles, are matters proper for appropriate police regulation and control. The location of such yards may, even though properly cared for by the owner, become a fire menace and a source of danger to and destruction of surrounding property, a rendezvous for thieves and other violators of the law, and their location at least should be within control of the proper municipal authorities of every city and village having a population and built up district sufficiently large to render them or their use a menace to public order and safety. The legislature could itself by appropriate statutory provisions regulate the subject, and may delegate the authority to local municipalities. That the authority is fully vested in the city of Minneapolis by the quoted provisions of its charter is clear. It is there granted in clear terms and is in no way restricted by the proviso added thereto, as above quoted, except perhaps that regulations imposed by city ordinances existing at the time the present charter power was granted may not be changed. But whether the earlier regulations may be changed or modified is not here involved. The authority thus conferred upon the city is full and complete and sustains the ordinance in question.

2. There is not in the ordinance itself anything to justify the conclusion that it is either arbitrary, unfair or unreasonable. It follows the lines of most police regulations, declaring that no person shall install or conduct a lumber-yard within the city without the consent or permission of the city council. The dance halls, the peddlers, the hawkers, hackmen and other trades, professions and occupations are thus regulated. The only thing required of one desiring to enter into the particular occupation is an application to the city council for a license or permit. There is nothing unreasonable or unfair in that, and the conclusion must be therefore that the ordinance is valid. State v. Taubert, 126 Minn. 371, 148 N. W. 281. None of the constitutional rights of the citizen, state or Federal, are thereby in any way infringed

or violated. State v. Wittles, 118 Minn. 364, 136 N. W. 883, 41 L.R.A. (N.S.) 456, Ann. Cas. 1913E, 433, and Evison v. Chicago, St. P. M. & O. Ry. Co. 45 Minn. 370, 48 N. W. 6, 11 L.R.A. 434, are distinguishable in their facts and not in point.

The extension of defendant's yard was in point of substance and fact a new yard, was a violation of the ordinance, and it does not matter that actual sales of lumber were not made in the new yard. The fact remains that defendant accumulated lumber therein in piles and otherwise which he intended for sale, and it is wholly immaterial whether a sale be made within the confines of the new yard, in the office across the street in the old yard, or in a down town office, should one be there conducted.

3. There was no error in excluding the evidence offered by defendant for the purpose of showing that, in denying his application for a license or permit to operate the new yard, the city council acted arbitrarily or unreasonably. A defense of that sort is not available to one who violates the ordinance. The person so refused a permit may have a remedy against arbitrary discrimination by the city council; we do not stop to consider what it may be (State v. Reiter, 140 Minn. 491, 168 N. W. 714), but clearly he may not defy the law by doing the prohibited act, and then be heard in defense on the ground of the alleged arbitrary action of the council in refusing him a license. Bainbridge v. City of Minneapolis, 131 Minn. 195, 154 N. W. 946, L.R.A. 1916C, 224, does not support defendant's case. There the proper municipal authority threatened to cancel an existing theatre license, and upon a proper showing was restrained by mandamus. Such a case presents an entirely different legal aspect than one where a license has been refused.

Finding no error in the record the order appealed from is affirmed.