## STATE EX REL. ROSE BROTHERS LUMBER & SUPPLY COMPANY, INC. v. LOUIS CLOUSING.[1]

August 21, 1936.

No. 30,882.

[1]Reported in 268 N. W. 844.

36

*R. S. Wiggin,* City Attorney, and *John F. Bonner,* Assistant City Attorney, for appellant.

*Gainsley, Goldstein & Levitt,* for respondent.

DEVANEY, CHIEF JUSTICE.

Proceedings for writ of *mandamus* to require appellant to issue two building permits for the erection of certain buildings on respondent's premises.

Respondent is a corporation and has for many years been engaged in the wrecking and construction of buildings and the sale of building materials. It owns and operates a lumberyard for the

·purpose of carrying on this business in the city of Minneapolis. Appellant is the inspector of buildings in the city of Minneapolis.

On April 10, 1934, a fire occurred on the premises of the respondent which partially destroyed several structures thereon.

Thereafter respondent applied to the appellant for building permits for the remodeling and repairing of the aforesaid structures and the erection of a new lumber shed on the premises, submitting plans and specifications in accordance with the applicable city ordinances in effect at that time. Appellant refused to issue the permits because the city council had adopted a motion forbidding the issuance of any permits for secondhand lumberyards and sheds until given further consideration by the council.

On January 29, 1935, an alternative writ of *mandamus* was allowed and issued in the district court of Hennepin county.

On January 31, 1935, the city council passed an ordinance, the pertinent portion of which reads as follows:

"No person, firm or corporation shall hereafter maintain, install or open any lumber yard or erect or maintain any building for the sale or storage of old or new lumber without first having obtained from the city council of the city of Minneapolis a permit to do so."

The matter came up for trial in February, 1935, before a court without a jury. The court found for respondent, and judgment was entered ordering issuance of a peremptory writ of *mandamus* commanding the appellant to issue building permits to respondent. This is an appeal from the judgment.

These questions are presented:

(1) Can effect be given to the ordinance passed after the issuance of the alternative writ, and is it applicable to respondent by its terms?

(2) Is the ordinance unconstitutional in and of itself or in its application herein?

■ The trial court held that because the ordinance in question was passed after the proceedings had begun and the alternative writ had been issued it could not be applied to respondent as it

was not intended to be retroactive or retrospective in effect. We cannot agree. The error in this conclusion lies in assuming that the rights of parties to proceedings of *mandamus* are to be determined on the basis of the circumstances existing at the time of the issuance of the alternative writ. The law in this state is to the contrary. The court is bound to consider the situation as it exists as of the time of the hearing on the question whether a peremptory writ should issue. Thus, in City of Owatonna v. C. R. I. & P. Ry. Co. 156 Minn. 475, 195 N. W. 452, 453, this court said:

"When a court is asked to exercise the extraordinary power of mandamus, it is not limited to a consideration of the facts and conditions as they existed at the time the proceeding was initiated, but should take into consideration the facts and conditions existing at the time it determines whether a peremptory writ should issue."

See also Dexner v. Houghton, 153 Minn. 284, 190 N. W. 179.

The situation as it existed at the time of the hearing was that respondent had no permit for the erection and repair of buildings. An ordinance had been passed and was in effect at that time requiring in certain instances permission from the city council for the erection and maintenance of buildings, and it was contended that this ordinance applied to respondent. That being the case, it was incumbent upon the trial court to determine whether the ordinance by its terms applied to respondent, and, if so, whether it was valid. In the light of the rule above quoted, it is obviously immaterial whether appellant, the city building inspector, had any legal right to refuse to issue the permits prior to the passage of the ordinance. The issue raised is whether respondent had any right to have them issued at the time of the hearing on the question of the peremptory writ. Whether appellant was right or wrong in refusing issuance of permits prior to the passage of the ordinance is of no importance. He cannot be compelled by *mandamus* to issue them if at the time of the hearing on the peremptory writ he had neither the legal right nor legal duty so to do. Respondent is not entitled to a peremptory writ of *mandamus* if at that time

it cannot show a clear legal right in itself and a corresponding legal duty on the part of appellant. A writ of *mandamus* will not issue unless it subserves a legal purpose. Dexner v. Houghton, 153 Minn. 284, 190 N. W. 179.

Respondent's contention that if the ordinance were held to deprive appellant of the right or duty to issue the permits in this case the building code of the city of Minneapolis would be repealed by implication is not sound. We cannot agree that this code or any part of it would be repealed. The ordinance merely requires that one desiring to erect or maintain certain types of structures must first obtain permission of the city council before permits may be issued by the city building inspector in the usual course. It is only an additional requirement or condition which must be complied with. Until it is complied with, the city building inspector has no right or duty to issue permits in such instance; but even after it is complied with the inspector may not issue a permit until the petitioning party has also complied with all the applicable terms of the building code. To hold otherwise would compel adoption of a strained or forced construction of the ordinance which a fair interpretation of its terms plainly will not allow.

This brings us to the question of whether or not the ordinance by its terms is applicable to this respondent.

The trial court was of the opinion that it was inapplicable to the business which respondent was conducting, for the ordinance stated that no person, firm, or corporation shall "hereafter" maintain, install, or open any lumberyard or erect or maintain any building for the sale or storage of old or new lumber without first having obtained a permit from the city council. It apparently was the belief of the learned trial judge that the use of the word "hereafter" in the ordinance prevented its application in this case because of the fact that respondent had been carrying on its business for many years and had applied for permits merely to repair old structures and to build new ones only as replacements of those destroyed. This assumes that the ordinance should be interpreted so as to apply only to the opening of new lumberyards and the erection and maintenance of new buildings where none had been

maintained or erected before. We believe this assumption to be unwarranted and the trial court's construction of the ordinance to be erroneous. The ordinance "hereafter" denies the privilege to maintain, install, or open a new lumberyard "or erect or maintain any building for the sale or storage of old or new lumber" without first obtaining a permit from the city council. It is to be noted that it includes the erecting of "any building" to be used for the sale or storage of lumber. This clearly embraces within its terms the erection of a new building, even though its erection is in the nature of a replacement of another. There is no sound basis for reading into the ordinance the limitation that before it can apply to the erection of a structure that structure must be one not intended as a replacement. Nor can we agree that the ordinance does not apply to the remodeling and repair of already existing structures. The term "maintain" clearly embraces within its meaning the repair of buildings. Weiher v. Phillips, 103 Ohio St. 249, 133 N. E. 67; Missouri K. & T. Ry. Co. v. Bryan (Tex. Civ. App.) 107 S. W. 572.

█ Respondent has assailed the constitutionality of the ordinance on several grounds: (a) That there is an unconstitutional delegation of power to the city council without restriction or limitation thereon; (b) that the ordinance results in an unconstitutional application herein as it was directed solely at the respondent by the city council; (c) that if the ordinance is held applicable it must be given a retroactive interpretation which would be unconstitutional as depriving respondent of its vested rights. These contentions will be discussed in the order named.

(a) It cannot be seriously disputed that the matter of maintenance and care of lumberyards and buildings used in connection therewith is a proper subject for appropriate police regulation and control. The location and condition of such yards and buildings may easily become a menace to life and property in the surrounding community because of the possibility of fire hazard. State v. Rosenstein, 148 Minn. 127, 181 N. W. 107. That being so, the state legislature can pass appropriate laws regulating the subject. It can also lawfully delegate this power to the proper municipal

authorities. Here that authority has been delegated to the city council of Minneapolis. See Minneapolis City Charter, c. IV, § 43.

The ordinance in question in this case does not prohibit the erection and maintenance of buildings for the sale or storage of lumber. It merely requires that one desiring to erect or maintain such structures obtain permission from the city council. There is nothing unconstitutional in vesting the power to dispense or withhold such permits in the city council. In State v. Dirnberger, 152 Minn. 44, 47, 187 N. W. 972, 973, this precise question was presented. The court, in speaking of the ordinance involved in that case, stated:

"It does not prohibit the establishment of new laundries within any district. It merely requires one desiring to start a laundry anywhere in the city to obtain permission of the city council. * * * The question before the council in each case will be whether the establishment of a laundry in the hands of the particular applicant is likely to be a nuisance or not to the particular neighborhood where it is proposed. There is nothing unconstitutional in vesting the dispensing power in such case in the city council."

See also State v. Taubert, 126 Minn. 371, 148 N. W. 281, 282; State v. Rosenstein, 148 Minn. 127, 181 N. W. 107.

Practically, in an ordinance regulating a matter of this kind it is impossible to provide definite standards to govern the action of the city council; hence lack of such standards or conditions in the ordinance does not make it invalid. As stated in State v. Taubert [126 Minn. 372]:

"The varying circumstances and conditions to be taken into account cannot be accurately anticipated in advance, and uniform and unvarying restrictions previously prescribed are liable to prove inadequate or inapplicable."

The United States Supreme Court has held that a municipal ordinance which grants to the municipal assembly the right to issue permission within its discretion in a case similar to the instant case is not unconstitutional as depriving one of his property without due process of law or denying to him the equal protection

of the laws. Fischer v. City of St. Louis, 194 U. S. 361, 24 S. Ct. 673, 48 L. ed. 1018. As there pointed out, we are bound to assume that any discrimination will be made in the interest of the public upon reasonable conditions applying to the necessary safety and well-being of the community to be affected. Every possible presumption is in favor of the validity of a legislative act, see 6 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 8929; and, in the absence of a showing of a present, unreasonable, practical application of the ordinance in question, we cannot assume that the city council will exercise its discretion in an arbitrary and unreasonable manner.

(b) We cannot at this time pass on the question whether the ordinance is unconstitutional in its particular application to respondent. That question is not before us. As has been pointed out, the ordinance was a proper exercise of the authority of the city council. Its validity as an ordinance is beyond dispute. The validity of its particular application to respondent cannot be determined until the council has been requested to issue permits and has refused to do so. The question then will be whether the council has abused its discretion in denying to respondent the permits desired. The fact that there is a possibility that the council may abuse its discretion when it is called upon to act at a later date in a certain instance is no constitutional objection to the ordinance itself. State v. Dirnberger, 152 Minn. 44, 187 N. W. 972; Fischer v. City of St. Louis, 194 U. S. 361, 24 S. Ct. 673, 48 L. ed. 1018.

We have not overlooked the fact that the trial court in its memorandum, which was made a part of the order for judgment, makes this statement:

"It is quite apparent that the ordinance last referred to was passed to prevent the relator from getting a permit.

"* * * It seems clear that were the relator to make formal application under that ordinance for a Council permit and the Council should deny its application, the Council itself very properly could be ordered by mandamus to issue the permit, since, the relator having complied with all ordinances and legal requirements,

such action on the part of the Council clearly would be arbitrary and unreasonable. Why, then, should the relator be compelled to go through the useless formality of making such application and having it denied?"

We have no quarrel with respondent's contention that it is the law in this state that a memorandum which is made a part of the order becomes a part of the findings of fact in the case. Thomas Peebles & Co. v. Sherman, 148 Minn. 282, 181 N. W. 715. This rule, however, presupposes and is subject to the limitation that before matter contained in the memorandum can be considered as a finding of fact it must be a proper subject for a finding of fact.

The parties have not favored us with a record of the testimony taken at the hearing so we are unable to determine upon what basis the court made its statement. But whatever the basis, the statement cannot alter the decision of this court. Whether or not the council's action on the respondent's application would be arbitrary and unreasonable was not properly an issue for the court's determination. No application had ever been made to the city council. Considered as a whole, in light of the court's remark that the ordinance was passed only for the purpose of preventing respondent from obtaining a permit, the statement amounts to nothing more than a prediction as to what the action of the council will be, and as to its validity. It also assumes that as the respondent had complied with all other ordinances and legal requirements a refusal by the council to issue the permits would necessarily be arbitrary and unreasonable. This assumption is erroneous. As already pointed out, the ordinance allows the city council of Minneapolis to exercise a proper discretion in issuing and withholding permits. Whether a refusal to issue a permit in a particular case is arbitrary and unreasonable will depend on whether or not the erection or maintenance of a lumberyard or buildings used thereon will constitute a nuisance and/or a source of danger to the particular community wherein located. State v. Dirnberger, 152 Minn. 44, 187 N. W. 972. If so, it may well be a proper exercise of the police power to prohibit their erection and maintenance even though other existing ordinances are sufficiently complied with. At any rate,

that is a question properly to be determined in the light of all the circumstances when and if the city council denies respondent the permits applied for. That question is not before us now. Were we to give effect to the trial court's statement in this case, the ordinance in question would be reduced to a state of complete ineffectiveness. First, the right to obtain a permit from the city council becomes a mere formality after compliance with other ordinances, thereby eliminating entirely the matter of exercise of discretion on the part of the council; then, reasoning from that premise, the last vestige of the ordinance is judicially erased by the court's removing the necessity of complying with the formality of application to the council.

What has been stated above applies also to that portion of the court's statement which is to the effect that this ordinance was passed to prevent respondent in particular from obtaining a permit. There is, however, a further objection to considering this portion of the statement as a proper finding of fact. We believe that it transcends the rule as to the permissible scope of inquiry into legislative acts. It is not proper to delve into the motives of a legislative body such as a city council except as they may be disclosed on the face of the particular act in question or by reference to general existing conditions or other legislative acts. Higgins v. Lacroix, 119 Minn. 145, 137 N. W. 417, 41 L.R.A. (N.S.) 737. This ordinance on its face is general in its terms. Nothing can be found therein or elsewhere within the sphere of permissible inquiry indicating that it was passed merely for the purpose of preventing respondent from obtaining a permit. Consequently the statement was improper and cannot be considered here.

(c) Respondent's contention that the ordinance if held to apply is retrospective or retroactive in effect has already been answered. Respondent had not commenced the construction or repair of its buildings at the time the ordinance was passed, nor at the time of the hearing on the peremptory writ. The contention therefore is not tenable. Nor is the argument of respondent that the ordinance deprives it of a vested right to carry on a business already established based on sound legal principle. Respondent does not have a

vested right to continue to maintain its lumberyard free from any restrictions or regulations enacted by the city council in the lawful exercise of its delegated police power. The principle to which we must adhere is succinctly stated in State v. Hovorka, 100 Minn. 249, 252, 110 N. W. 870, 871, 8 L.R.A.(N.S.) 1272, 10 Ann. Cas. 398:

"No person can acquire a vested right to continue, when once licensed, in a business, trade, or occupation which is subject to legislative control and regulation under the police power. The rights and liberty of the citizen are all held in subordination to that governmental prerogative, and to such reasonable regulations and restrictions as the legislature may from time to time prescribe."

We have already held that this ordinance is a reasonable and proper exercise of the police power granted to the Minneapolis city council.

It follows that the writ of *mandamus* was improperly and improvidently issued.

Judgment reversed and writ discharged.

