## THE ALEXANDER COMPANY AND ANOTHER v. CITY OF OWATONNA.[1]

August 30, 1946.

No. 34,184.

[1]Reported in 24 N. W. (2d) 244.

*Helon E. Leach,* City Attorney, and *Oppenheimer, Hodgson, Brown, Donnelly & Baer,* for appellant.

*Moonan & Moonan,* for respondents.

CHRISTIANSON, JUSTICE.

Appeal from a judgment permanently restraining defendant from preventing plaintiffs from constructing a driveway over a public sidewalk and cutting the curb in connection therewith.

In 1942, defendant, operating under a home-rule charter, enacted a zoning ordinance, No. 326, which has been in force at all times since its enactment. The provisions thereof which are pertinent to this decision are as follows:

"Section 7. C2 Commercial Districts. In a C2 Commercial District the following uses are permitted:

"A use permitted in R1, R2, R3 Dwelling Districts and C1 Commercial Districts.

"Any commercial, retail or wholesaling merchandising establishment.

"Office building, bank, hotel.

"Job printing or newspaper.

"Bus Depot.

"Hardware and agricultural implements.

"Automobile sales service.

"Private Vocational school.

"Fire Station, Telephone Exchange.

"Licensed places of amusement, restaurants.

"Radio Broadcasting Station.

"Saloons or on- and off-sale liquor stores subject to the ordinances of the city.

"Mortuaries or funeral homes or any drive-in business, requiring the cutting of the curb or driving over the sidewalk, such as a gasoline filling station or on-sales car lot, only after a public hearing as provided for in Section 5, Article I, of this ordinance, said printed notice to give the location, name of applicant and kind of business."

Section 5 of Article I of said ordinance reads in part as follows:

"No change shall be made in the boundary line of the districts or in the use, height or area regulation of any district except after a public hearing and upon the two-thirds vote of the City Council."

The manner of giving notice of such public hearing is contained in the succeeding paragraphs of Section 5 of Article I of the ordinance.

Plaintiff The Alexander Company is the owner of a commercial or store building located in the C2 commercial district of the city as defined in the foregoing zoning ordinance. The building, which is located in the downtown business section of Owatonna, extends through an entire block and has two street fronts, one of which (the south end) faces West Bridge street, and the other (the north end) faces West Broadway. As a consequence, the building is referred to as both 130 West Bridge street and 129 West Broadway. The block in which the building is located is completely occupied by buildings used for various business and professional purposes,

such as grocery, drug, and clothing stores, restaurants, a studio, and offices. Much retail trade is done along Bridge street in this block, and there is considerable pedestrian and vehicular traffic passing it.

In March or April 1944, The Alexander Company leased the building in question to plaintiff Carl Bachman for a period of four years for the purpose of operating a Firestone store therein under a franchise from the Firestone Tire & Rubber Company. The general nature of such business is to sell the products of the Firestone company, such as tires, tubes, batteries, and other auto supplies, as well as various home supplies. In connection with and as a part of such business, the plan was to operate a service department for the changing of tires, the repair of tires and tubes, the installation of batteries and seat covers, the changing of spark plugs, fan belts, lights, etc., and the doing of other light garage jobs. The plans for this service department contemplated the construction of a driveway over the sidewalk in front of the building on the Bridge street or south end of the building, which driveway would require cutting the curb in front of the building. Alterations of the building were also planned.

About April 12, 1944, The Alexander Company applied to the city engineer for permission to make the planned alterations of the building and to construct the proposed driveway over the sidewalk, including the cutting of the curb. The engineer suggested some changes in the plan submitted to him. The changes were acceptable to plaintiff, and thereupon the engineer told the company that it could go ahead with the building alterations and the construction of the driveway, including the cutting of the curb.

Remodeling of the building was accordingly done and was completed early in June 1944. The job of constructing the driveway was then commenced. After the sidewalk had been torn up, the curb cut, and the driveway partially constructed, a member of the city council of Owatonna observed the work and objected to its continuance, pointing out that the work was being done without authority from the city council. As a result, the work was stopped.

When it was later resumed, it was again stopped on orders from the mayor. It was then agreed that the work should be held in abeyance until the matter had been taken up and considered by the city council. In the meantime, The Alexander Company had filed with the city clerk an application, directed to the city engineer, for a certificate of occupancy of the building. At a special meeting of the city council held June 13, 1944, such application was considered by the council. At this meeting, eight citizens of Owatonna appeared and objected to the application on the ground that a driveway at such a location would constitute an extreme traffic hazard. The president of The Alexander Company also appeared at the hearing. It was voted by the council not to give the certificate of occupancy.

On June 20, 1944, the matter again came before the council. At this meeting, a petition signed by a considerable number of property owners was presented in opposition to the proposed driveway. Some of the petitioners also made statements in opposition to the project. At such time, representatives of The Alexander Company requested that a certificate of occupancy only of the building be granted. At this time the company also filed a formal application in writing for a permit to construct and maintain the driveway in question and for permission to cut the curb in connection with such construction, specifically stating, however, that the application was being made without waiving the position taken by it that such building was subject to the provisions of the zoning ordinance relating to garages. The council at such time voted to direct the city engineer to restore the sidewalk and curb. It also voted to issue to The Alexander Company a certificate of occupancy of the building.

A request having been made for a public hearing on the formal written application for permit to construct and maintain the driveway in question, the council fixed the time of such hearing for July 5, 1944, the date of a regular council meeting, and notice of such meeting was given pursuant to the zoning ordinance. The meeting was duly held. In support of such application, the presi-

dent of The Alexander Company, plaintiff Carl Bachman, and Carl Jacobson, the contractor, appeared and testified. In opposition to the application, 13 individuals appeared and testified, and the gist of their evidence was that the proposed driveway would constitute a serious traffic hazard. At the conclusion of the testimony the council voted to defer action to a later date. On July 18, 1944, the council took action on the matter and by a vote of four to three denied the application for permit. A formal resolution of denial then being presented and it being moved and seconded that same be adopted, the resolution was adopted by unanimous vote of all members of the council. The resolution of denial as thus passed reads as follows:

"RESOLUTION

"A RESOLUTION DENYING THE PETITION AND APPLICATION OF ALEXANDER COMPANY FOR A PERMIT TO CUT THE CURB IN FRONT OF THE BUILDING LOCATED AT 130 WEST BRIDGE STREET, IN THE CITY OF OWATONNA, MINNESOTA.

"WHEREAS, Alexander Company, by Donald M. Alexander, President, has filed a petition and application with the City Council of the City of Owatonna for a permit allowing the cutting of the curb for driving over the sidewalk in front of the building located at 130 West Bridge Street, in the City of Owatonna, Minnesota, and

"WHEREAS, A public hearing was held on said application, as provided for in the Zoning Ordinance of the City of Owatonna, and

"WHEREAS, The City Council of the City of Owatonna has considered said petition and application and, after due consideration, has determined that the cutting of the curb and the use of said driveway, as petitioned for, would be hazardous to pedestrians and against the public welfare and safety of the public.

"Now, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF OWATONNA, at a regular meeting of said council duly held in the City of Owatonna, in the City Hall of said city, on the 18th day of July 1944, all members being present, that the said application and petition to cut the curb in front of the building located

at 130 West Bridge Street in the City of Owatonna, Minnesota, be, and the same hereby is, refused and denied.

"Be It Further Resolved, That a purported permit heretofore issued by the City Engineer of the City of Owatonna, for the cutting of said curb, be, and the same hereby is, revoked.

"It Is Further Resolved, That a copy of this resolution be served upon Alexander Company on or before July 20th, 1944.

"Passed and adopted July 18, 1944.

"Approved and Signed,

"E. W. Hammel, Mayor.

"Attest: Gladys Phelps,
          "City Clerk,
"Published July 20, 1944.
"(Seal)"

In August 1944, an action was commenced by plaintiffs against defendant seeking a money judgment for damages and an injunction permanently restraining the city from preventing plaintiffs from constructing the driveway in question and cutting the curb in connection therewith. A trial was had before the court without a jury. Pursuant to findings of fact and conclusions of law made therein by the court, judgment was awarded in favor of plaintiffs granting them an injunction permanently restraining defendant from preventing the construction of the driveway and the cutting of the curb in connection therewith. By numerous assignments of error, the trial court's findings of fact and conclusions of law are challenged by defendant on the grounds that they are not sustained by the evidence and are contrary to law. The questions thereby raised, the determination of which are necessary to decision here, may be summarized as follows:

(1) Did the city engineer have the power to determine whether plaintiffs should be permitted to construct a driveway over the sidewalk and cut the curb in connection therewith?

(2) Is the defendant estopped to question the legality of the permit purportedly given by the city engineer to plaintiffs to construct such driveway and cut the curb?

(3) Assuming that the power to determine whether such permit should be granted was lodged with the city council, did the council's refusal to grant permission for the construction of the driveway and the cutting of the curb constitute arbitrary and unreasonable action and the denial of due process?

■ The trial court found that the city engineer had authority to issue to plaintiffs the permit for the drive-in at 130 West Bridge street and that the engineer in fact granted such permit to plaintiffs. If the granting of this purported permit by the city engineer was illegal and without authority, then plaintiffs cannot justify construction of the driveway upon the permit thus granted by the engineer unless, as we shall hereinafter consider and decide, the city is estopped to deny that the city engineer had such authority. It would seem to be clear that the city council and not the city engineer is vested with the power to grant or deny an application for a permit to construct a drive-in such as the one in question. A reference to the pertinent provisions of the zoning ordinance with respect to constructing a driveway across a sidewalk and cutting the curb in connection therewith shows specific prohibitions against granting rights for the operation in the C2 commercial district of the city of "Mortuaries or funeral homes or any drive-in business, requiring the cutting of the curb or driving over the sidewalk, such as a gasoline filling station or on-sales car lot, only after a public hearing as provided for in Section 5, Article I, of this ordinance, * * *." Inasmuch as plaintiffs wanted this driveway for what is a drive-in business, it comes within the purview of the ordinance. The hearing referred to in the ordinance is a hearing by the city council. Prior to the purported issuance of the permit by the city engineer, there was no hearing or action by the council with respect to issuing the permit. The act of the city engineer, therefore, in granting the permit to plaintiffs was without authority and therefore null and void. The record does not sustain the findings of the trial court that the city engineer had authority to grant such permit, nor is there any basis in the evidence for the findings and conclusion of law that such power ever was delegated to the

city engineer by the city council. A public officer or agent has only such powers as are conferred upon him by law to act. 5 Dunnell, Dig. & Supp. § 7998. It is a general rule that usage and custom will not serve to enlarge the powers of a public officer or agent beyond those given him by law. Annotation, 65 A. L. R. 811. "A council cannot delegate its legislative power, or its administrative power calling for judgment or discretion, to a committee or otherwise." 4 Dunnell, Dig. & Supp. § 6576, and cases cited.

■ The city engineer, then, being without authority to grant the permit which he gave plaintiffs, we are faced with the question whether the city is estopped to deny the authority of the engineer to issue the permit. We hold that the city is not estopped to deny such authority. The function here involved was governmental and not proprietary in nature. The general rule applicable in such a situation is stated in 2 Dunnell, Dig. & Supp. § 3211, as follows:

"The doctrine of estoppel applies to the state acting in its proprietary capacity, but not when it acts in its sovereign or political or governmental capacity. The state is not estopped by the unauthorized acts or omissions of its officers or agents. The same principles apply to municipalities." (Citing cases.)

A contrary rule would lead to chaos in municipal affairs. If the doctrine of estoppel could be invoked in such situations, municipalities would repeatedly find themselves bound by the unauthorized acts of officers and agents possessing only limited authority. Experience has shown the wisdom of the prevailing rule that persons dealing with municipal officers and agents are bound by constructive notice of the law and public records with respect to the powers and functions of such officers or agents.

"* * * Neither a wrongful nor an unauthorized act of a municipal officer or agent estops the municipality. Moreover, error, mistake, or laches on the part of a municipal officer cannot be made the basis of an estoppel against the city if an estoppel will result in impeding the conduct of public affairs by the municipality." 19 Am. Jur., Estoppel, § 168.

And in 38 Am. Jur., Municipal Corporations, § 669, we have the following:

"* * * On the other hand, a municipality is not estopped by the unauthorized acts of its officer or agent, by his laches, or by his wrongful act. Nor can an estoppel result from official fraud and corruption. It has been variously stated, in this connection, that agency by estoppel has no proper place in the law of municipal corporations; that no estoppel can grow out of dealings with public officers of limited authority; and that the doctrine of equitable estoppel cannot ordinarily be invoked to defeat a municipality in the prosecution of its public affairs or governmental functions because of an error or mistake of, or because of a wrong committed by, one of its officers or agents which has been relied upon by a third party to his detriment."

Cases to the same effect are Board of Co. Commrs. v. Nelson, 51 Minn. 79, 52 N. W. 991; Board of Co. Commrs. v. Dickey, 86 Minn. 331, 90 N. W. 775; State v. Foster, 104 Minn. 408, 116 N. W. 826; State v. Merchants Nat. Bank, 145 Minn. 322, 177 N. W. 135. In light of the foregoing decisions and authorities, we must hold that there is no basis in law for the findings of the trial court that the city is estopped to deny to its engineer the authority to issue the permit to plaintiffs.

▆▆ The authority to determine whether or not the permit to construct the driveway and cut the curb being lodged with the city council, did that body's refusal to grant the permit constitute arbitrary and unreasonable action and the denial of due process?

It is argued by plaintiffs that the action of the city council in denying the application for permit to construct and maintain the driveway was unreasonable and arbitrary and outside the legitimate field of the police power, inasmuch as it here amounts to denial of access to the store building in question. This, plaintiffs assert, is depriving plaintiffs of a valuable property right; that it is taking property without compensation and is a denial of due process. In considering this phase of this case, it may be well to first take note of some aspects of the police power and the extent

to which the courts have sustained its application. The term "police power" is not susceptible of precise definition, but it may be generally defined as the power of the state to impose such restraints upon private rights as are necessary for the general welfare. This power is one of the most essential of governmental powers and one of the least limitable. In the exercise thereof, the state may impose liability without fault. N. Y. C. R. Co. v. White, 243 U. S. 188, 37 S. Ct. 247, 61 L. ed. 667, L. R. A. 1917D, 1, Ann. Cas. 1917D, 629; Arizona Copper Co. Ltd. v. Hammer, 250 U. S. 400, 39 S. Ct. 553, 63 L. ed. 1058, 6 A. L. R. 1537.

The limits of the police power are incapable of exact definition, but, stated generally, the power extends to all matters where public welfare, morals, health, and safety are involved. Inasmuch as in the instant case the question of public safety is involved, it should be noted that this has long been considered a legitimate and proper field for the exercise of the police power. This court, in State ex rel. City of Minneapolis v. St. P. M. & M. Ry. Co. 98 Minn. 380, 389, 108 N. W. 261, 263, 28 L.R.A.(N.S.) 298, 120 A. S. R. 581, 8 Ann. Cas. 1047, quotes with approval from the case of Boston & Maine R. Co. v. Co. Commrs. 79 Me. 386, 393, 10 A. 113, 114, as follows:

"* * * 'This power of the legislature to impose uncompensated duties and even burdens, upon individuals and corporations for the general safety, is fundamental. It is the "police power." Its proper exercise is the highest duty of government. The state may in some cases forego the right to taxation, *but it can never relieve itself of the duty of providing for the safety of its citizens.* This duty, and consequent power, override all statute or contract exemptions. The state cannot free any person or corporation from subjection to this power. All personal as well as property rights must be held subject to the police power of the state.'" (Italics supplied.)

In the recent case of Queenside Hills Realty Co. Inc. v. Saxl, — U. S. —, 66 S. Ct. 850, 851, 90 L. ed. —, the United States

Supreme Court said: "Protection of the safety of persons is one of the traditional uses of the police power of the States."

Municipalities have generally been accorded wide latitude in the exercise of police powers, it being recognized that the more thickly populated areas frequently present conditions requiring the application of more stringent and rigid regulations than are required throughout a state generally. This is especially true with respect to conditions affecting public health and safety.

"In considering the nature, extent, and purpose of the exercise of police powers by and in municipal corporations, the obvious but highly significant point has often been made in the opinions of the courts that the preservation of the health, safety, welfare, and comfort of dwellers in urban centers of population requires the enforcement of very different, and usually much more stringent, police regulations in such districts than are necessary in a state taken as a whole." 37 Am. Jur., Municipal Corporations, § 276.

Ordinances of the type here involved, containing as they do restrictions on the uses to which property may be put and requiring in some instances, as here, that the approval of the municipality must be procured before businesses of certain types can be established in certain districts of the municipality, have been generally upheld. State v. Amor & Co. 153 Minn. 244, 190 N. W. 59; Standard Oil Co. v. City of Minneapolis, 163 Minn. 418, 204 N. W. 165; State ex rel. Rose Bros. L. & S. Co. Inc. v. Clousing, 198 Minn. 35, 268 N. W. 844; State ex rel. Beery v. Houghton, 164 Minn. 146, 204 N. W. 569, 54 A. L. R. 1012.

If the particular business here planned to be conducted by plaintiffs at the location mentioned cannot be operated successfully without the driveway here sought, then, they argue, the city council's denial of the application to construct such driveway is tantamount to denying them the right to operate the type of business they desire to operate at said location. Assuming that this might be the result of the council's denial, we should still be obliged to hold that the council's refusal in this instance is a legitimate and legal exercise of the police power, inasmuch as it appears that the regula-

tion or restriction thus imposed has a substantial relation to the object sought to be accomplished by such restriction, which object has been here indicated to be the safety of the public. In the instant case, the city council, through the exercise of judgment and discretion, concluded that the proposed driveway over the public sidewalk as an instrumentality of plaintiffs' business would constitute a dangerous traffic hazard.

In considering the question of the extent of defendant's police powers with respect to the public streets, it should not be overlooked that it is generally accepted that municipalities possess extensive and drastic police powers with respect to the care, supervision, and control of streets. The exercise of such powers by municipalities has been upheld and sustained by the courts in a great variety of situations. In the instant case, the charter of defendant, like those of many other Minnesota municipalities, has specifically conferred upon the city council broad powers with respect to streets. Chapter 6 of the Owatonna charter states in part as follows:

"The city council shall have the care, supervision and control of all public highways, bridges, streets, alleys, and public grounds within the limits of said city; * * *."

This court has held that charter provisions of this nature vest broad and sweeping powers in the governing bodies of cities where such provisions are in force.

The rule generally prevailing in the United States is that an abutting owner does not have such a right of property in the public streets as to give him a right to appropriate a portion of the street to the purpose of his private business. It might well be argued that this in effect is what plaintiffs are here attempting to do. They are seeking to construct and maintain over a public sidewalk (part of a public street) a driveway for vehicular traffic as an incident to and as an instrumentality of their private business. Clearly, this is placing an instrumentality of private business upon and over a public street—encroaching upon a public easement. While this is a privilege which under proper circum-

stances may be conferred, it is not a matter of right. It must yield to such regulations and restrictions as the city council finds to be necessary for the safety of the traveling public.

This court said in the course of its opinion in Schultz v. City of Duluth, 163 Minn. 65, 68, 203 N. W. 449, 450:

"* * * To do business upon public streets is not a matter of right like the right of ordinary travel. Nor is the right to carry on such a business to be placed upon the same basis as that of conducting a lawful occupation upon private property within a municipality. The use of public streets for private enterprise may be for the public good, but even so it is a privilege that may be granted, regulated or withheld."

It has been held that a driveway used to serve a business is a part of such business and, as such, subject to the restrictive regulations that are applicable to such business. Village of Great Neck Estates v. Bemak & Lehman, Inc. 128 Misc. 441, 218 N. Y. S. 359, 223 App. Div. 853, 228 N. Y. S. 917, affirmed, 248 N. Y. 651, 162 N. E. 562.

Plaintiffs contend that there are no cases where such regulations and restrictions have, under the guise of police power, been carried to the point where they have denied access to property. While there may not be many situations in the reported cases which are precisely like the case at bar, it is a general rule that municipalities may, in the interest of public safety, impose such restrictions and regulations as they may find necessary to the preservation of the public safety. There are many cases in harmony with the general rule as we have stated it. And it should here be noted that in the case of Breinig v. Allegheny County, 332 Pa. 474, 482, 2 A. (2d) 842, 848, relied upon by plaintiffs, the court definitely and clearly enunciates a principle which is in accord with the position of the city herein when it states in its opinion: "The abutter cannot make a business of his right of access in derogation of the rights of the traveling public." Furthermore, contrary to the contention of plaintiffs, there are reported cases showing that vehicular access to streets has been denied abutting property owners. In the case of Wood v. City of Richmond, 148 Va. 400, 138 S. E. 560, the

owner of a lot sought to obtain an injunction to restrain the city of Richmond from tearing up a driveway leading onto his lot, on the ground that he had a right of access to the lot from both streets and that such right was absolute and inherent. The court held that he was not entitled to the relief sought, stating that, while it is conceded that an abutting property owner has an easement in the public road which amounts to a property right (148 Va. 407, 138 S. E. 562)—

"we are of the opinion that the exercise of this right is subordinate to the right of the municipality, derived by legislative authority, to so control the use of the streets as to promote the safety, comfort, health and general welfare of the public."

Another case which in many of its aspects is strikingly similar to the case at bar is that of Tilton v. Sharpe, 85 N. H. 138, 155 A. 44. The property owner there sought to restrain interference by the city with his construction of a driveway across the sidewalk. The contemplated driveway was for cars entering and leaving his place of business. He contended that if he did not secure such driveway he could not profitably conduct the business which he contemplated operating at the location in question. The court refused to grant the relief prayed for and stated in the course of its opinion (85 N. H. 139, 155 A. 46):

"* * * the test of the reasonableness of the proposed use is to be found, not by inquiring whether such use is essential to the profitable transaction of any particular business on his lot, but in answer to the inquiry whether such use would be fraught with such unusual hazard that the danger to the traveling public would be out of proportion to the detriment to the owner by being deprived of it. The convenience or necessity of the owner constitutes but one side of the question. Upon this, the character of the use and the accessibility of his lot at other points are material factors. For instance, it would be difficult to conceive of a situation where an owner should be deprived of access to his lot by persons on foot at any point on a bounding street however extensive his frontage; on the other hand, if an owner should propose to propel freight or

vehicles with great force or speed across a congested sidewalk at grade, such use would be clearly unreasonable even though it was the only accessible entrance to his lot. Between such extremes a great variety of situations may arise in which the relative rights of the owner and the traveling public can be determined by no set rules or formulas, but in which the reasonableness of the proposed use must be determined by weighing its unusual dangers to the public against the inconvenience and disadvantage to the owner arising from its denial. Tilton v. Sharpe, 84 N. H. 393, 400, 151 A. 452. 'In short, no single factor, no particular right, here controls; but all aspects of the situation must be taken into account * * *.' Tilton v. Sharpe, 84 N. H. 43, 47, 146 A. 159, 161. It follows that, while the fact that the defendant cannot profitably conduct the business he proposes without an entrance at B is a factor which he has a right to have weighed in support of his contention, it is not determinative of his right."

In the instant case, the city council, after a hearing upon the application for permit to construct such driveway and after consideration of the question, decided that the proposed driveway would create a traffic hazard to the traveling public. Accordingly, the council adopted a resolution containing a recital to that effect and denying the application for permit to construct the driveway. The general rule is that it is primarily for the legislative or administrative body, clothed with the proper power (the city council in the instant case), to determine when such regulations and restrictions are essential, and its determination in this regard, in view of its better knowledge of all the circumstances and assuming that it is acting with due regard for the rights of all parties, will not be disturbed by the courts unless it can plainly be seen that the regulation or restriction has no substantial relation to the end stated to be the object of such regulation or restriction. Here, there were many witnesses at the council hearing in opposition to the application for the permit to construct and maintain the driveway in question. The gist of their evidence was that the proposed driveway would constitute a serious traffic hazard. There is noth-

ing in the record to indicate that the witnesses were unreliable or that the nature of their testimony was so inherently improbable as to entitle it to no weight. It is well to remember in this connection that the location of the proposed driveway was in a downtown retail business block of the city of Owatonna, where there is considerable traffic. It is not unreasonable to assume that reasonable men might well consider the construction and maintenance of a business driveway over a public sidewalk at such point a real traffic hazard. This court said in the case of Sverkerson v. City of Minneapolis, 204 Minn. 388, 392, 283 N. W. 555, 557, 120 A. L. R. 944:

"* * * Vehicles present an ever increasingly difficult problem to every city of the nation. The ordinance herein contested attempts to meet a problem which all are aware exists."

Here, the trial court, with reference to the council's hearing of July 5, 1944, on plaintiffs' application for permit, stated in its findings that—

"the City Council refused to permit the City Engineer to testify as a witness before the City Council. * * * and that the testimony of the City Engineer was material, important and vital to the full presentation of plaintiffs' claims before the City Council. * * * and that by refusing to receive the evidence of the City Engineer, Council deprived the plaintiffs of a full and fair hearing and denied to them due process of law."

Such findings are wholly without support in the evidence, for in the trial court the city engineer did testify and there stated what his testimony would have been at the council hearing had he there testified. He testified as to the driveway, the remodeling plans and changes therein, and as to the application for the permit and his granting thereof—matters otherwise presented to the council and not in dispute. He also testified that had he appeared at the council hearing he would have testified that it was his belief that he had the right to grant a permit to construct such driveway and that he considered his action proper under the zoning ordinance. The lack of such a statement by the city engineer at the council

hearing surely was not in any view of the matter prejudicial to the rights of plaintiffs. The refusal of the council to hear the engineer at the council meeting, if in fact there was a refusal, therefore amounted only to a refusal to permit him to argue that he had the power and that it was his absolute duty to issue the permit in question. This was a question of law. It could not be determined by the views of the engineer or any other layman. It was a matter for legal argument. Plaintiffs were given an opportunity to argue this question before the council, and apparently their counsel availed himself of that opportunity. The fact that the council may have refused to accept or follow the city engineer's view of the law cannot be said to be a denial of due process.

With respect to the proper sphere and province of the courts in reviewing the actions of legislative or administrative bodies in questions of this nature, the United States Supreme Court, Mr. Justice Sutherland speaking for the court, said in Zahn v. Board of Public Works, 274 U. S. 325, 328, 47 S. Ct. 594, 595, 71 L. ed. 1074, 1076:

"* * * The Common Council of the city, upon these and other facts, concluded that the public welfare would be promoted by constituting the area, including the property of plaintiffs in error, a zone 'B' district; and it is impossible for us to say that their conclusion in that respect was clearly arbitrary and unreasonable. The most that can be said is that whether that determination was an unreasonable, arbitrary or unequal exercise of power is fairly debatable. In such circumstances, the settled rule of this court is that it will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question."

This court has repeatedly held, with respect to the decisions of municipal and other governmental bodies and boards having the duty of making decisions involving judgment and discretion, that it is not the province of the court to substitute its judgment for that of the board or body making such decision, but merely to determine whether the administrative or legislative body making such

decision was within its jurisdiction, was not mistaken as to the applicable law, did not act arbitrarily, oppressively, or unreasonably, and that there was evidence to support its determination. Illustrative of such cases are the following: Brazil v. County of Sibley, 139 Minn. 458, 461, 166 N. W. 1077, 1078, where Mr. Chief Justice Brown said:

"* * * In all instances where an appeal from the determination of the local tribunal has been provided for, by which an aggrieved party may remove to the district court the entire proceeding and all questions presented therein, including that of public interests, in considering the same we have uniformly applied the rule stated, and as respects the question of propriety and necessity limited consideration of the appeal to the inquiry whether the local board acted arbitrarily and in disregard of the best interests of the public, or upon an erroneous theory of the law, or whether the evidence is practically conclusive against the order appealed from."

In State ex rel. Dybdal v. State Securities Comm. 145 Minn. 221, 225, 176 N. W. 759, 761, Mr. Justice Dibell said with respect to the power of the courts relative to the decisions of an administrative commission which passed upon questions, the determination of which involved judgment and discretion:

"* * * It cannot disturb the commission's determination because it does not agree with it. It can only interfere when it appears that the commission has not kept within its jurisdiction, or has proceeded upon an erroneous theory of the law, or unless its action is arbitrary and oppressive and unreasonable so that it represents its will and not its judgment, or is without evidence to support it."

In Zion Evangelical Lutheran Church v. City of Detroit Lakes, 221 Minn. 55, 58, 21 N. W. (2d) 203, 206, this court, in the course of an opinion by Mr. Justice Matson, said: "The court must not substitute its judgment for that of the city council and thus usurp the function of local governing bodies." And Mr. Justice Mitchell,

speaking for this court in In re Wilson, 32 Minn. 145, 148, 19 N. W. 723, 725, said:

"* * * Of course, such regulations must be reasonable, of which fact the courts must judge. But, in assuming the right to do so, courts will not look closely into mere matters of judgment, and set up their own judgment against that of the municipal authorities, when there is a reasonable ground for a difference of opinion."

Our examination of the record in this matter, in the light of what seems to us to be the overwhelming weight of authority, constrains us to the conclusion that the learned trial court erred in finding, as it did, that the action of the city council in denying the application for a permit to construct the driveway was "unnecessary, arbitrary and oppressive and against the whole weight of the evidence submitted to it and without any legal foundation and operates to illegally deprive plaintiffs of access to their said building."

It is further earnestly argued by plaintiffs that, inasmuch as they are being deprived of access to the store building and as the right of access is a valuable property right, the council's denial of the application for a permit to construct and maintain the driveway in question is depriving plaintiffs of a valuable property right and, under the circumstances, constitutes taking property without due process. They argue that the right to "regulate" does not give the right to prohibit, as, they assert, is being done here. The right to regulate, however, in some instances carries the right to prohibit the carrying on of certain businesses in certain designated areas. This has long been recognized as a proper exercise of the police power if such prohibition has a proper relation to the public safety or the remedying of other conditions which thereby conduce to the general welfare. This court has so stated. In In re Wilson, 32 Minn. 148, 19 N. W. 724, *supra,* Mr. Justice Mitchell said:

"* * * Under a grant of police power to *regulate,* the right of the municipal authorities to determine where and within what limits a certain kind of business may be conducted, has been often sustained."

In the instant case, it should be noted, however, that plaintiffs are not being denied pedestrian access to their store building. In this, the situation is precisely as it was prior to the time the building was leased for the purpose of conducting therein a drive-in business. Foot access is still available to plaintiffs in their business. The premises may still be used for a nondrive-in business as was done prior to its lease to plaintiff Bachman. As heretofore stated, if denial of the application to construct the driveway should render impossible the conduct of the business planned at said location, such denial being based upon the necessity of protecting the safety of the traveling public, the action of the council would still be proper and valid. The importance of the question warrants reference to the holdings of some of the leading cases on this question. In Reinman v. City of Little Rock, 237 U. S. 171, 35 S. Ct. 511, 59 L. ed. 900, an ordinance prohibits the conduct of a livery stable business in the city within a designated area. This prohibition was held to be a valid exercise of the police power, even though it was there pointed out that it would result in the suppression of a going business.

In Hadacheck v. Sebastian, 239 U. S. 394, 36 S. Ct. 143, 60 L. ed. 348, Ann. Cas. 1917B, 927, plaintiff was arrested for conducting a brick-manufacturing business within a designated area of the city of Los Angeles in violation of a zoning ordinance. It appears that such business had been in existence prior to the time the area had become a part of the city of Los Angeles. The value of the land was about $800,000 for a brickmaking business, but not more than $60,000 if used for residential or any purpose other than brickmaking. If the ordinance was declared valid, it was argued that the owner would be compelled to abandon his business and would be deprived of the use of his property. The court, however, declared the ordinance to be valid under the police power, Mr. Justice McKenna in the opinion of the court (239 U. S. 410, 36 S. Ct. 145, 60 L. ed. 356) stating:

"The police power and to what extent it may be exerted we have recently illustrated in Reinman v. [City of] Little Rock, 237 U. S.

171 [35 S. Ct. 511, 59 L. ed. 900]. The circumstances of the case were very much like those of the case at bar and give reply to the contentions of petitioner, especially that which asserts that a necessary and lawful occupation that is not a nuisance *per se* cannot be made so by legislative declaration. *There was a like investment in property, encouraged by the then conditions; a like reduction of value and deprivation of property was asserted against the validity of the ordinance there considered; a like assertion of an arbitrary exercise of the power of prohibition. Against all of these contentions, and causing the rejection of them all, was adduced the police power. There was a prohibition of a business, lawful in itself, there as here. It was a livery stable there; a brick yard here. They differ in particulars, but they are alike in that which cause and justify prohibition in defined localities—that is, the effect upon the health and comfort of the community."* (Italics supplied.)

In the foregoing cases, the use of property for certain purposes was prohibited in certain designated areas under the exercise of the police power. Especially is it to be noted that in the Hadacheck case a brickyard of the value of $800,000, which had been located outside the city limits when acquired, was suppressed after it had been included within the city limits. Inasmuch as properties and businesses of the character and value involved in the last two cases cited must yield to the supremacy of the police power, there is very little force in the argument that a regulation which in the interests of the public safety prohibits the construction and maintenance over a public sidewalk of a vehicular driveway for the use of a private business is an unreasonable and unlawful exercise of the police power and a denial of due process.

The judgment appealed from is reversed.

PETERSON, JUSTICE (dissenting).

In my opinion, plaintiffs were entitled as a matter of law, as the trial judge held, to prevail on the merits. All the authorities, cases and texts alike, hold that plaintiffs were entitled to install the driveway under a proper permit from the city and that, if the city refused to grant a permit, it should be compelled to do so. As

the court said in the similar case of Brownlow v. O'Donoghue Bros. Inc. 51 App. D. C. 114, 276 F. 636, 637, 22 A. L. R. 939: "We find no authority which sustains the position of the Commissioners [the city here], but there are many which are against it," and, as the Michigan court said in Goodfellow Tire Co. v. Commr. of Parks, etc. 163 Mich. 249, 128 N. W. 410, 30 L.R.A.(N.S.) 1074:

"Our attention has not been called to a case holding that an abutting owner might be deprived of ingress and egress by means of a driveway to and from his property to the highway in front of it. Certainly, when the legislature, in 1879, gave to the commissioners authority 'to make all reasonable rules and regulations concerning the use of said boulevard,' no one supposed they might deny the right of the abutting owner to construct a driveway to the boulevard."

Whether the street was established by dedication by the owner of the land or by a taking of an easement under the power of eminent domain, the same proceedings that created the public right to the street simultaneously vested in the abutting owner a right of access thereto. Adams v. C. B. & N. R. Co. 39 Minn. 286, 39 N. W. 629, 1 L. R. A. 493, 12 A. S. R. 644.

The whole law on the subject of an abutting owner's right of access and the regulation of the right by public authority is summed up in 25 Am. Jur., Highways, § 154, which reads:

"The right of access to and from a public highway is one of the incidents of the ownership or occupancy of land abutting thereon. Such right is appurtenant to the land, and exists when the fee title to the way is in the public as well as when it is in private ownership. It is a property right of which the owner cannot be deprived without just compensation. This easement extends to the full width of the street. It is subordinate, however, to the public convenience, of which the public authorities having control of the streets are the judges, and is subject to such reasonable use of the street, not inconsistent with its maintenance as a public highway, as may be necessary for the public good and convenience and does not seriously impair it. *The public authority may there-*

*fore impose reasonable regulations governing the exercise of such right. It cannot, however, by virtue of such power of regulation, be prohibited or unduly restricted.* Neither may any fee or charge be imposed or exacted for the exercise of such right. Such right of access is, however, to be distinguished from the right to the use of the way itself, which the abutter enjoys as a member of the general public.

"In the exercise and enjoyment of such easement of access, an abutting owner has a right to construct a driveway or other suitable approach in front of his premises, from his land to the traveled part of the highway, if reasonably necessary and if done in such a way as not to interfere with the rights of the public, subject to such reasonable regulations as the public authority may prescribe. Furthermore, a municipality, by exercising its right to establish its grades and to fill in or bridge or otherwise improve its street and right of way so as to raise or lower the surface of such grade, cannot preclude him from employing and using such reasonable means or making such reasonable improvements as may be necessary to enable him to go from his property to the street." (Italics supplied.)

The text is sustained by a unanimity of authority found in the annotations there cited. 22 A. L. R. 942, 47 A. L. R. 902, 66 A. L. R. 1052.

While it is said that the right of access may be regulated by public authority, that does not mean, as the text cited shows, that under the guise of regulation the right may be taken away from the owner. The power to regulate the right of access does not include that of taking it. In the case of Brownlow v. O'Donoghue Bros. Inc. *supra,* the court in so holding said: "But regulation is one thing, and prohibition is another." In view of the fact that the authorities are collected and analyzed in the annotations cited, it is necessary to refer to only a few of the many authorities.

In the Goodfellow Tire Company case, *supra,* the Michigan court held that owners of property abutting on a highway have an absolute right of access thereto, as they do here under the rule of

Adams v. C. B. & N. R. Co. *supra,* and that, since that is true, a statute empowering commissioners to make reasonable rules and regulations concerning the use of a boulevard and providing that no connections therewith shall be allowed without a permit from the commissioners did not authorize the refusal of a permit. There, as here, a tire dealer sought a permit for drive-in access to his property from the adjoining street, which was denied by the regulatory authority. There, however, the court awarded a mandamus to compel the issuance of the permit.

In the O'Donoghue Bros. case, *supra,* the commissioners of the city of Washington were enjoined from preventing the owners of a gasoline filling station from maintaining an entrance across the sidewalk for use of automobiles.

As has been indicated, where a permit to make connection with the street to enable the abutting owner to have access to it is denied, mandamus will be awarded to compel issuance of the permit upon the theory that denial of the permit is an arbitrary act the performance of which should be compelled. Goodfellow Tire Co. v. Commr. of Parks, etc. 163 Mich. 249, 128 N. W. 410, 30 L.R.A.(N.S.) 1074, *supra;* In re Singer-Kaufman Realty Co. 196 N. Y. S. 480; Greeley Sightseeing Co. v. Riegelmann, 119 Misc. 84, 195 N. Y. S. 845; Annotation, 47 A. L. R. at p. 903. Here, of course, the proceeding is by injunction. But the rights of the parties have been fully litigated. The decision below should be affirmed and the case should be sent back with a direction that defendant grant, as an incident of the injunctive relief, whatever permit is necessary to enable plaintiffs to construct the driveway between their property and the street.

Cases to sustain the majority's conclusion are cited which involved an entirely different fact situation or where what was said related to such a situation. In Breinig v. Allegheny County, 332 Pa. 474, 2 A. (2d) 842, the court held that in a fact situation such as we have here the abutter's right of drive-in access cannot be prohibited, but that it could be where he has other means of access. In Wood v. City of Richmond, 148 Va. 400, 138 S. E. 560, and in

Tilton v. Sharpe, 85 N. H. 138, 155 A. 44, it was held that where the abutting owner had other means of access the right of access to a particular street may be denied by a police regulation. Of course the rule laid down in those cases can have no application here, because of the fact that plaintiffs have no means of access to the street except the one here asserted. The legal question in those cases is different for the reason that, while they held that in a situation, where, as here, the abutting owner's right of access cannot be prohibited, it may be denied where he has other means of access. Here, the question is whether a prohibition is valid where the abutting owner has no other means of access. In the cited cases the question was whether the fact that the owner had other means of access may be considered in denying the abutting owner what is otherwise clearly his right. It is to be remembered also that these cases so far as they hold that the right of access may be denied are contrary to the overwhelming weight of authority.

I think that the case of Breinig v. Allegheny County, *supra*, supports the view that plaintiffs' right of access to the street by a driveway for vehicular traffic across the sidewalk cannot be prohibited by a police regulation and that it can be taken away from them only by the exercise of the power of eminent domain upon payment of just compensation. In that case, the county, after construction work on a driveway for vehicular traffic connecting plaintiffs' premises with the street had been begun under permit therefor, revoked the permit and destroyed the work already done. The court awarded plaintiffs an injunction against further interference with the construction of the driveway and $350 damages caused by defendants' acts. The judgment was affirmed. In the opinion the court undertook to clarify the law in Pennsylvania. Among other things the court held that, while the exercise of the right of access may be regulated, the right cannot be taken away under the guise of regulation, and said:

"The absolute prohibition of driveways to an abutting owner's land which fronts on a single thoroughfare, and which cannot be reached by any other means, is unlawful and will not be sustained.

But the public authorities have the undoubted right to regulate the manner of the use of driveways by adopting such rules and regulations, in the interest of public safety, as will accord some measure of access and yet permit public travel with a minimum of danger."

Furthermore, it should be observed that cases like Wood v. City of Richmond, *supra,* are deemed in harmony with the views I have expressed. Annotation, 66 A. L. R. 1052, where the cited case is analyzed and discussed. The case of Tilton v. Sharpe, *supra,* is no different.

Of course, where it is necessary to acquire the abutting owner's right of access from his property to a street, the public is not helpless. Where there is legislative sanction for such a taking, the public may acquire the abutting owner's right of access. See, Burnquist v. Cook, 220 Minn. 48, 19 N. W. (2d) 394; Anzalone v. Metropolitan Dist. Comm. 257 Mass. 32, 153 N. E. 325, 47 A. L. R. 897. It has not been made to appear whether the defendant city has the requisite legislative authorization for such a taking; but that is not important, because of the fact that defendant justifies denying plaintiffs access to the street under its power to regulate. If there is to be a denial of plaintiffs' right of access, it should be the result of a compensated taking under condemnation and not an uncompensated one under the guise of a police regulation. Regulation may amount to a taking, and where it does it is confiscation. The only difference between an actual taking and such a regulation is, as has been said of a restriction preventing any reasonable use of property, that the regulation "leaves the owner subject to the burden of payment of taxation, while outright confiscation would relieve him of that burden." 37 Am. Jur., Municipal Corporations, § 286, citing Arverne Bay Const. Co. v. Thatcher, 278 N. Y. 222, 15 N. E. (2d) 587, 117 A. L. R. 1110.

MAGNEY, JUSTICE (dissenting).

I am in agreement with the dissent of Mr. Justice Peterson.

MATSON, JUSTICE (dissenting).

I concur in the dissent of Mr. Justice Peterson.